## White v. McNabb.

(Decided November 30, 1910.)

### Appeal from Powell Circuit Court.

1. Land—Action in Ejectment—Title Shown by Plaintiff—Fifteen Years Actual Possession.—The rule is well settled that. a plaintiff in ejectment must recover on the strength of his own title. He may do this in two ways: First, by showing a paper title from the Commonwealth; Second, by showing that he and those under whom he claims have been in the open, notorious, actual, continuous, peacable and adverse possession of the property in controversy for a period of fifteen years. To acquire a title in this way, the adverse possession must not only be actual, but so continued as to have furnished a cause of action every day during the whole period.

2. Same—Entry Under Title—Possession Acquired.—One who enters on land under a patent, deed or title bond, claiming to the extent

of the boundaries of the patent, etc., becomes possessed of the land so far as it is not adversely held by others.

R. W. SMITH and J. D. ADKINSON for appellant.

C. F. SPENCER for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Claiming that he was the owner and entitled to the possession of a tract of five acres of land, known as the Coal Bank land, situated on White's Branch in Powell county, Kentucky, and that appellant was wrongfully withholding possession thereof, appellee, H. S. McNabb, brought this action against appellant, J. B. White, for the recovery of the land. Appellant denied appellee's title, and pleaded title in himself. The jury returned a verdict in favor of appellee. From the judgment based thereon, this appeal is prosecuted.

It is the contention of appellant that the court erred to his prejudice in failing to award him a peremptory instruction at the conclusion of the evidence for appellee. To determine this question it will be necessary to set forth the evidence at some length.

The appellee was introduced as a witness in his own behalf, and testified as follows:

"I am 70 years old, and live in Powell county, about three miles from the land described in the petition, which is mine known as the Coal Bank and have known the boundary of land on White's Branch of which this five-acre boundary is a part for about fifty years. My father Isaac McNabb settled on a large tract of land on White's Branch and lived there about 30 or 40 years claiming and occupying same as his own, grazing and raising stock on it. Dug coal from the coal bank and his possession was never questioned by any one. In about 1870 he sold the five acres upon which the coal bank is situated to my brother, James McNabb, and made him a deed for it. He sold some of this land to a Mr. Maple about the time they were building the K. U. Railroad my brother James sold this five acres on which the coal bank is on to O. V. Forkner, * * * and made a deed for it. O. V. Forkner hired me to make him a road to the coal bank and I helped him to dig coal and hauled it to his house on several occasions and his title was never questioned. After O. V. Forkner's death I bought this land from Mrs. Mary E.

Forkner, the widow of O. V. Forkner, and paid her cash for it and she made me a deed for it. This was in 1896. When I bought the land there was a small house on it. Mrs. Forkner had the house rented to J. M. Daniel and J. B. Derickson as her tenants. The understanding was that Daniel and Derickson were to pay me the rent on the house. When they abandoned it they were to deliver the keys to me. This five-acre tract is separate and apart from the Quisenberry tract. Some five or six years ago Mr. J. B. White took possession of the house and land and has been claiming it ever since. I have a copy of a survey made for James McNabb by R. M. Jones, surveyor, dated June 19, 1888.''

To all these statements as to the possession of the land and of the deeds mentioned by the witness the appellant objected. The court overruled the objections, and the appellant at the time excepted.

At this point appellee introduced the survey covering the land in controversy, which was made for James Mc Nabb to O. V. Forkner. The survey is dated January 7th, 1888. He also introduced a deed, dated April 4th, 1896, from Mary E. Forkner, who was the widow of O. V. Forkner, to himself. This deed does not appear to have been recorded.

James McNabb and two other witnesses testified for appellee as follows:

''I (James McNabb) am a brother of the plaintiff and own one-third or have a third interest in the tract of land in controversy. (Defendant objected to this statement of ownership and the court overruled the objection; whereupon the defendant at the time excepted.)

''My father claimed the land on White's Branch and ranged stock there until he sold out many years ago, and I never heard of anyone claiming it against him until about 20 years ago when the Quisenberrys came in there and claimed the land. They put mills in there and had the timber cut and John Daniel had a mill there from about 1891 to 1892 on four or five years cutting the timber. The Quisenberrys had tenants there and after the defendant White bought the land he has been in possession. I claim one-third of the five-acre tract, but refused to join in this suit. (Defendant objected to this statement of ownership, which was overruled, and the defendant at the time excepted.)

''The five-acre tract which covers the coal bank was deeded to me by my father about 30 years ago and we marked off the boundary when the deed was made and

had a survey made in 1888, which survey is the same as described in the petition. I afterwards sold an interest to O. V. Forkner, who died sometime thereafter and I and also Mrs. Forkner dug coal up at this bank when Orlando Forkner dug coal whenever he wanted it and we were never disturbed in anyway. The survey of the Quisenberry tract under which the defendant White claimed does not cover this coal bank. It may touch one corner of the five acres. I saw Mr. Spencer survey the Quisenberry lines."

Asa Bowen was then introduced, and testified as follows:

"I have known this land for a great number of years, and remember when Isaac McNabb once claimed it and lived on the land on White's Branch for 30 years more than thirty years ago."

James Derickson testified as follows:

"I was on White's Branch in the year 1895, when John Daniel was sawing the timber there and in the fall of that year one of the houses or shanties there was locked up with a padlock on it and Daniel sent me to Mrs. Mary E. Forkner for the key to get into the house. This was fourteen years ago last fall, as I remember. We got the key from her for the lock, and this is all that I know about it. (To this statement as to the key and all these statements by the witness the defendant at the time objected and excepted.)

"I rented the house on the land from Mrs. Forkner in 1895, and agreed to pay rent for same when I quit there in 1898 by arrangement with Mrs. Forkner I delivered to John Daniel who agreed to deliver possession to Sam McNabb when he finished his sawing there, and Mrs. Forkner had sold to McNabb."

The rule is well settled that a plaintiff in ejectment must recover on the strength of his own title. He may do this in one of two ways: First, by showing a paper title from the Commonwealth; second, by showing that he and those through whom he claims have been in open, notorious, actual, continuous, peaceable and adverse possession of the property in controversy for a period of fifteen years. In this case appellee made no attempt to show a paper title from the Commonwealth. His right to recover, then, depends upon whether or not he, or those through whom he claims, acquired title by adverse possession. To acquire title in this manner the adverse possession must not only be actual, but so continued as to have furnished a cause of action every day during the

whole period. (Braxdale v. Speed, 1 Mar. 106; Jones v. McCauley, 2 Duv. 14.) Different and distinct periods of possession cannot be added to constitute a bar. Wickliffe v. Ensor, 9 B. M. 253.) One who enters under a patent, deed or title bond, claiming to the extent of the boundaries of the patent, etc., becomes possessed of the whole so far as it is not adversely held by others. (McLaurin v. Salmons, 11 B. M. 96; Hoskins v. Cox, 2 B. M. 306; Fox v. Hinton, 4 Bibb. 559.) If one without title enters upon land which is vacant, and marks a boundary with the intention of taking possession, he acquires possession co-extensive with the bounds marked out. (Campbell v. Thomas, 9 B. M. 82.)

In the case before us, it is not shown that appellant's father, Isaac McNabb, entered under a deed, patent, title bond, or other instrument of writing by which the extent of his possession could be determined; nor is it shown that he marked out a well-defined boundary around the tract of land which is claimed; or that the land in controversy was included within a marked boundary. In the absence of such showing, the mere fact that he occasionally dug coal on the tract in controversy would not show such continuous possession as would furnish a cause of action every day during the time that he claimed the land. Of course, appellee was improperly permitted to testify to the fact that his father, in 1870, sold the land to appellee's brother, James McNabb, and made a deed to it, and that his brother sold the land to O. V. Forkner and made the latter a deed to it. These deeds were not produced, and appellee had no right to testify to their contents in the absence of proof showing his inability to produce them. (Hughes v. Easten, 4 J. J. Mar. 572.) Furthermore, it is not shown that James McNabb had any possession of the land in controversy which might be termed adverse. The only evidence that O. V. Forkner had adverse possession of the land is that appellee helped him on several occasions to dig coal in the tract in controversy: The record does show, that in 1896, Mrs. Forkner, who is not shown to have had any title other than dower interest in the tract of land, conveyed her interest therein to appellee. At the same time she had the house on the land rented to J. M. Daniels and J. B. Derickson. The house was rented in 1895 by Derickson. Derickson remained there until 1898. He then turned the house over to John Daniels, who agreed to deliver possession to Sam McNabb when he finished his sawing at the mill. How long it took him to

finish the sawing, or how long he remained in the house, is not shown.  For five ir six years prior to the institution of the action appellant had possession of the land in controversy.  Of course, appellee might have shown that he and those through whom he claimed had acquired title prior to the time appellant took possession of the land.  That being true, the possession by appellant for a period of five or six years  would not have been sufficient to deprive appellee of his title.  (Sutton v. Pollard, 96 Ky. 640); but the record fails to show any continuous possession on the part of appellee, or of any one, or of all, of.those through whom he claims.  There may have been different and distinct periods of possession, but, as said before, they can not be added so as to constitute a bar.

As appellee failed to show a record title, or a title by adverse possession, the trial court erred in refusing to award appellant a  peremptory  instruction.   The judgment is, therefore, reversed  and cause remanded for a new trial consistent with this opinion.