## Continental Realty Co. v. Harvey

(Decided January 24, 1913.)

### Appeal from Breathitt Circuit Court.

1. Land—Action to Quiet Title—Adverse Possession.—In an action by appellant to quiet its title to the land in controversy, it appearing that at no time since the bond from Samuel Harvey to Hudson which was executed in 1879, up to April, 1911, the time of appellee's entry, was there an actual occupant of the land, or even a claimant of it, other than appellant and those through whom it claims, and it having been in the actual, open and adverse possession of the land for the statutory period, it was error to dismiss its petition.

2. Land—Action to Quiet Title—Adverse Possession.—Samuel Harvey had parted with his equitable title when he executed the bond for title to Hudson, and appellant and those through whom it claims have with that color of title since claimed and held the land. It follows, therefore, that appellee acquired no title by the deed relied on by him from Samuel Harvey.

MARTIN T. KELLEY, for appellant.

KASH & KASH, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

On the 9th of July, 1879, there was issued to Samuel Harvey, a patent for a tract of land on Bear Branch in Breathitt County, Kentucky, under a survey made several years previously. He seems to have claimed this land before the patent was actually issued, for on the 29th day of October, 1878, he entered into a writing, by the terms of which, he contracted and sold fifty (50) acres of land on the left fork of that branch to James Hudson. At or prior to the sale to Hudson, Samuel Harvey had been the owner of what is known as the Marshall survey adjoining the Harvey patent, being on the right hand side of Bear Branch going up, and the Samuel Harvey patent being on the left. In some way, about the

same time that Hudson became the owner of the Harvey patent, and was occupying the house on the Marshall patent, Wiley McDaniel became the owner of the Marshall patent, when on the 20th day of August, 1879, Hudson assigned to him the bond which Samuel Harvey had executed to Hudson, whereby McDaniel, who was already the owner of the adjoining Marshall patent became the owner of so much of the Harvey patent as was embraced in the bond from Samuel Harvey to James Hudson.

McDaniel continued to occupy the house on the Marshall patent and at the same time claimed and exercised acts of ownership over the Harvey land. Thereafter, Sam Noble bought both tracts of land from Wiley McDaniel, and lived in the same house that McDaniel had lived in, and exercised acts of ownership over the tract as McDaniel had done, but there was no assignment of the Samuel Harvey bond by McDaniel to Sam Noble, only a delivery of it. Samuel Noble conveyed the Marshall tract and so much of the Harvey tract as was embraced in the bond to Henry Noble, who took possession of same about 1885 or 1886, residing all the time in the house on the Marshall patent. It does not appear distinctly whether anybody prior to 1911 ever actually occupied or lived on the Harvey patent. Henry Noble continued to occupy the house on the Marshall patent and to exercise rights of ownership over the whole tract conveyed to him by Samuel Noble, including the Harvey patent, until the year 1903, when he sold and conveyed the whole tract to C. J. Little.

The Harvey tract consisted during all this time of wild land and was chiefly valuable for its timber; however, Henry Noble and some of the earlier claimants, at different times, made clearings and cultivated small portions of the Harvey tract along the branches, and built some fencing thereon. In 1889, while Henry Noble was in possession of same, the whole tract of land including the Marshall patent and so much of the Harvey patent as was claimed by Henry Noble, was surveyed as one tract by W. C. Strong, a Surveyor of Breathitt County, and Strong's survey by metes and bounds appears in this record. It appears from the testimony of Strong that at the time he made the survey, the boundary around the tract was only partially marked, but that when he made the survey, he plainly marked the boundary all around. Henry Noble continued to live on the land until 1903, claiming to

the boundary so marked in 1889. In 1903 he sold the whole tract to C. J. Little and conveyed to him the identical land embraced in the survey made by Strong, having continued through all that time to exercise rights of ownership over the whole tract so conveyed, but in fact occupying all the time the house on the Marshall patent. Thereafter, Little conveyed the same tract of land to appellant, Continental Realty Company, Little and that Company having been in possession of the same under the Henry Noble deed and exercising rights of ownership as Noble had done up to April, 1911.

At that time appellee, Wesley Harvey, a nephew of the original patentee, Samuel Harvey, claiming under a deed executed to him by Samuel Harvey dated March 31, 1911, entered upon the Samuel Harvey patent, cut some timber and constructed a small house or shack, and claimed to be the owner of the Harvey patent under the deed from his uncle. This action was instituted by appellant against him to quiet its title to the tract of land so conveyed by Henry Noble, and to enjoin Harvey from interfering with their enjoyment thereof, and from cutting timber or exercising rights of ownership over any part thereof.

Appellant's petition having been dismissed, it appeals.

Appellee filed an answer in which he set up his deed from Samuel Harvey and asserted title thereunder; to this appellant replied pleading among other things, that it and those through whom it claimed, had been in the actual, open, notorious and adverse possession, claiming to a marked boundary of the tract of land described in its petition for the statutory period, and the only question we deem it necessary to consider is whether they had acquired title by such possession as they show.

Samuel Harvey had parted with his equitable title to this land when he executed the bond for title to Hudson in 1878, and appellant and those through whom it claims have with that color of title since claimed and held the land. What specific acts are necessary to constitute adverse possession by a holder of land over an adjoining tract has always been a more or less troublesome question, and the application of the law to the facts and circumstances surrounding each transaction of that character must control the determination of the given case. While we are not willing to say that any of the claimants prior to Henry Noble, who occupied the house on the Marshall

patent had exercised such acts of ownership as to put them in actual adverse possession of the Harvey patent, it is perfectly clear that after Henry Noble in July, 1889 caused the two tracts to be surveyed as one and the boundary to be plainly marked, and thereafter, claimed to hold to that boundary so marked, and cultivated and used and erected fencing on the Harvey land, that from that time on he was certainly in the open, notorious and adverse possession of the whole tract so marked. The deed from Samuel Noble to Henry Noble does not appear in the record, but it is perfectly plain that he was claiming through Samuel Noble, and the other claimants under the original bond from Samuel Harvey to Hudson.

The possession of Henry Noble beginning in July, 1889 together with that of Little and the appellant, was continuous, open, adverse and notorious up to April, 1911, a part of the Harvey land being cleared and enclosed, when appellee for the first time entered upon the land, a period of nearly twenty-two (22) years. At no time since the bond from Samuel Harvey to Hudson was executed up to April, 1911 was there any actual occupant of the Harvey land; or even any claimant thereof, other than Henry Noble, Little and appellant. and those through whom they claimed.

The case of Overton v. Perry, 129 Ky., 415, was strikingly similar to this in its essential facts, and the court in dealing with the question as to what acts were necessary by an adjoining land owner to constitute adverse possession over a contiguous tract, and in passing upon the question of adverse possession said:

"It appears that the land in controversy was embraced in a tract conveyed to William Mynhier in the year 1883. The tract so conveyed adjoined Mynhier's home farm, of which he was in possession. Mynhier had the tracts of land surveyed, and the boundary so marked that it included the land in question; and from that time on he claimed to a well-defined boundary, including the land in controversy. It was not necessary for him to make a new entry upon the land thus purchased in 1883, for the reason that the land being contiguous to his home place, and being surrounded by a well-defined boundary, and not being held by another under a superior title, nor in the actual possession of another, Mynhier's possession, upon acquiring the land, immediately extended to the whole boundary thereof. It is true the deed

to Mynhier did not furnish him a good record title, but it was admissible for the purpose of showing the extent of his claim."

See also Taylor & Crate v. Burt & Brabb Lumber Company, 109 S. W., 348.

For the reasons given, the judgment is reversed, with directions to enter a judgment in accordance herewith.