## Bassett v. Lush.

(Decided December 16, 1913).

### Appeal from Grayson Circuit Court.

1. **Deeds—Possession—Extent of Possession.**—One whose deed embraces the whole of a lap or interference between two tracts of land and who enters upon a part of the interference, and actually clears, fences, and cultivates a part thereof, there being at the time no occupant, his possession will be deemed to extend to and be co-extensive with the whole interference, although the balance thereof be outlying woodland.

G. W. STONE, M. M. LOGAN and ORA E. HAZELIP for appellant.

J. M. CAMPBELL, W. O. JONES for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

This is an action by appellant against appellee wherein he alleges he is the owner and in possession of 306 acres of land in Grayson County, and that appellee had wrongfully entered upon it and cut timber.

Appellee in his answer denied that appellant was either the owner of or in possession of the whole tract of land described in the petition, and set up in himself ownership of 127 acres, more or less, and further alleges that a part of his boundary so described was also within the boundary alleged to be owned by plaintiff, to-wit: a strip 74 poles wide on the southwest end of his (appellee's) above described tract; and appellee further set up title by adverse possession for the statutory period.

The tract of land in question embraces about forty or forty-five acres, and the controversy seems to have originally arisen out of whether or not it was embraced within a certain exception in what is known as the old May patent, and is the small tract shown by the map on file as the "Collard Interference," and was so designated on the map made by appellant's vendor prior to his purchase, and to which map he had access before his purchase.

The case was transferred to equity and tried before the chancellor, who dismissed the plaintiff's petition, and he appeals.

It is appellant's contention that he has shown a complete chain of title from the Commonwealth to himself; but in our view of the case, this is immaterial; appellee claims title by possession holding under color of title by himself and his vendors, beginning with a deed from Jarboe to Sims in 1879.

It is earnestly insisted for appellant that appellee's deed from his immediate vendor (Collard) does not embrace the land in controversy, although this question seems to have been made in this court for the first time. It is conceded, however, by appellant's counsel that the land was embraced in the deed from Jarboe to Sims and from Sims on down to Collard, appellee's immediate vendor; but it is claimed that in Collard's deed to appellee the calls were different and do not embrace it.

It is sufficient to say in answer to this contention that appellee's answer in the second paragraph thereof expressly set up the fact that a portion of the boundary which he claims was within the boundary claimed by the plaintiff, and in a general way refers to the interference

as a strip 74 poles wide on the southwest end of his (appellee's) tract, evidently referring to the "Collard Interference," and this allegation remains undenied; so that there is in the pleadings no issue as to whether this interference is embraced within appellee's deed.

Not only so, but in Collard's deed to appellee, Collard expressly refers to the land conveyed as the same land conveyed to him by Layman by deed dated the 13th of May, 1898, and recorded in a certain deed book at a certain page, and a reference to the deed from Layman to Collard shows that it has the precise description contained in the deed from Jarboe to Sims. From this there would appear to be no doubt that the tract of land conveyed by Collard to appellee was the same tract of land conveyed by Jarboe to Sims, and by Layman to Collard, although the calls may not be the same.

This action was instituted in July, 1911; at that time there was enclosed by fence, cleared and in cultivation about 16 or 18 acres of this Collard Interference; the balance of it was outlying woodland, but the boundary was marked by well-defined lines. Of the 16 or 18 acres of cleared land Collard, who had owned it after 1898, had cleared and cultivated about 8 or 10 acres on the interference, and the remaining 8 or 10 acres had been cleared and cultivated for a number of years prior to 1898.

After the date of the deed from Jarboe to Sims in 1879, and about 1889, Ben Kennison, claiming under a title bond from Layman, who claimed under a title bond from some of Sims' vendees, took possession of the Collard house, and, as previously said, exercised acts of ownership over the Collard Interference. He not only cut and hauled timber from the Collard Interference, but he cleared and cultivated 8 or 10 acres of land on it and actually fenced it. So that if Kennison's possession of the enclosed part of the Collard Interference was sufficient to give him possession of the whole of the interference, then appellee's claim of adverse possession must be sustained.

The Collard Interference was well known, no one had ever lived upon or occupied it, and for many years it had been a disputed question whether or not it was embraced in an exception out of the May patent or whether it was a part of the May patent. Under these circumstances, Kennison, in 1889, although living in a house

outside of the interference, cleared land, erected fences, and cultivated land within the interference. Such acts are certainly open and notorious, and could have had no other effect than to notify the whole world that he was claiming it.

It has been consistently held by this court, beginning with the early case of Fox v. Hinton, 4 Bibb, 559, that where there is an interference or lap, the possession of one who enters, even under a junior patent, upon a part of the lap, will be deemed to extend to and be co-extensive with the whole interference.

Under the rule laid down in that case there can be no doubt that Kennison, who claimed under the deed from Jarboe to Sims, which embraced the whole of the Collard Interference, when he cleared and fenced a part of that interference, from that time had possession of it all. (Overton v. Perry, 129 Ky., 415; Continental Realty Company v. Harvey, 151 Ky., 705.)

There is some evidence in the record that Kennison, during his occupancy of the Collard house, did not claim to own the interference; but it is very unsatisfactory, and cannot be given much weight in the face of the fact that he actually cleared 8 or 10 acres within the interference and fenced and cultivated it.

We have concluded that from the time Kennison made this entry on the interference and actually cleared and fenced this land he had possession of the whole of the interference, and that appellee and his vendors have been in actual adverse possession of it since, and that he therefore has a good possessory title.

Judgment affirmed.