## Sexton, et al. v. Ely, et al.

(Decided November 25, 1914.)

### Appeal from Breathitt Circuit Court.

Land—Action of Trespass to Try Title—Adverse Possession—When Patent Cannot Prevail Against.—In an action to recover damages for the cutting of timber by the defendants on land claimed by the plaintiffs, where the weight of the evidence shows that the plaintiffs, under a deed to their ancestor, entered upon and held actual, adverse and continuous possession of the land, on which the cutting of the timber was done, to a well defined, marked boundary, for more than fifteen years before the institution of the action, the defendants cannot justify the cutting of the timber by showing that the land is embraced within the boundary of a patent issued to their ancestor, older in date than the deed of plaintiffs' ancestor. Nor will such possession in the plaintiffs, as indicated, be defeated by yet another patent, older in date than that of defendants' ancestor also embracing the land, as the plaintiffs' possession, being in the lap of both patents, must

prevail over the senior as well as the junior patent, although as between the patents the senior in date would prevail.

McGUIRE & McGUIRE for appellants.

L. Y. REDWINE and KELLY KASH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted by the appellees to recover of appellants damages for the cutting and taking by the latter of timber from a tract of land in Breathitt County, described in the petition, of which appellees claim to be the owners and in the possession. At the time of filing the petition an injunction was obtained by appellees to prevent further cutting of timber on the land by appellants. The answer of the appellants denied appellees' ownership of the land upon which the timber was cut, alleged that it was not embraced in the land described in the petition; and, in addition, set up in the answer a boundary of land to which they alleged title by reason of a patent issued to their ancestor, Micajah Howard, in November, 1848; and that the timber for the cutting of which appellees sued was upon the land embraced by the Howard patent. Appellees' reply alleged that the Micajah Howard patent, set up in the answer, was embraced within the boundary of a patent for 126,-140 acres, issued in 1784 to James Reynolds by the State of Virginia, which rendered the Howard patent void; and that neither of the patents embraced the land in controversy.

After the filing of the above-mentioned pleadings appellees filed an amended petition perfecting the description given of the land in the original petition and alleging their actual, continuous and adverse possession thereof to a well marked and defined boundary for more than fifteen years before the institution of the action. By an order subsequently entered appellees elected to stand upon the description given of the land in the amended petition in so far as it appeared to conflict with that in the original petition. Appellants filed an answer controverting the averments of the amended petition. The evidence was all taken in the form of depositions and the case tried by the court without the intervention of a jury. By the judgment rendered the court held that the tract of land in controversy is within the boundary lines of the James Reynolds patent, which rendered the

Macajah Howard fifty-acre patent void; but further held that appellees are the owners of the land in controversy because of their continuous, actual, adverse possession thereof to a well-defined marked boundary, under a title of record, for more than fifteen years before the institution of the action. The judgment also dismissed the counterclaim of appellants and awarded appellees their costs. The former complain of the judgment and have appealed.

The record does not contain a survey or plat of the land in controversy, which necessarily leaves to inference many things that, with their aid, would have been explained and better understood. We, however, gather from the record before us that the appellees, as heirs at law of James Williams, deceased, owned by inheritance from him a tract of land on Quicksand Creek containing 250 acres and that this land was conveyed James Williams in 1868 by his father, Henry Williams, and to the latter it was conveyed some years previously by John Hargis. Quicksand Creek runs through the land. The greater part of the land, containing the dwelling house and other buildings, lies on the north side of the creek and the remainder on the south side thereof. If the land in controversy is embraced within the boundary of the deed from Henry Williams to James Williams it is of that part of the tract lying on the south side of the creek.

The land covered by the Micajah Howard patent was not located or its boundary established by the evidence; but if its location and boundary are as claimed by appellants, it is, according to the weight of the evidence, included within the boundary of the Reynolds patent, and, being junior in date to that grant, is void. Appellants, who are heirs at law of Micajah Howard and are claiming under the patent issued to him, did not attempt to prove nor did they claim that they or their ancestor have had actual possession of the land embraced by that patent. Therefore, the Howard patent, even if it embraced the land in controversy, cannot be relied on by appellants to defeat appellees' right thereto. On the other hand, if, as claimed by appellants, the Micajah Howard patent covers the land in controversy and is not covered by the Reynolds patent, it cannot defeat appellees' right to the land in controversy if, as claimed by the latter, they and their ancestor have, under color of title, had actual, adverse possession thereof to a well-

defined, marked boundary for as much as fifteen years prior to the institution of the action.

We are of opinion that the evidence conduced to show that the whole of appellees' land as well as the Howard patent, if the latter is located as claimed by appellants, is covered by the Reynolds patent; but that fact counts for nothing against appellees' and their ancestor's possession of their land, if, as claimed by them, such possession has been actual, adverse and continuous ever since the ancestor, James Williams, moved upon the land and established his residence thereon in 1868, more than forty years ago. The residence of James Williams and that of appellees after him has, it is true, been all the while on that part of the land lying north of Quicksand Creek, but their claim of possession and the possession itself, according to the evidence, has extended to and embraced all that part of the 250 acres lying south of the creek, including the land in controversy. It is also apparent from the weight of the evidence that the possession thus claimed was to a well-defined, marked boundary. According to two witnesses the boundary ran with the length of the top of the ridge on one side of the creek and therefrom to and with the top of the ridge on the other side; that the land in controversy lies between the creek and the top of the ridge on the south side thereof, and that it is within the lines as claimed and pointed out by James Williams.

A witness, Row, testified that the lines around the land as claimed by James Williams were old marked lines, up and down the hill and on top of the ridges and that these lines include the place where the timber in controversy was cut. Watkins, another witness, testified that the line as claimed by James Williams, begins on a black gum and beech on the bank of Quicksand and runs in a straight line to the top of the hill south of the creek, including the trees cut by appellants. Haggins, ex-sheriff of Breathitt County, testified that he helped to survey the 250-acre tract of land for James Williams and to run the lines south of the creek, and according to his testimony and that of one or two other witnesses, the boundary of the land on the south side of the creek, including the land in controversy, was as given in the amended petition filed by appellees. J. C. C. Bach, a leading lawyer of Jackson, testified that he had known the Williams land for many years and that Williams had claimed and exercised acts of ownership

of the land from the top of one ridge across the creek to the top of the other, since his first recollection.

A half dozen or more witnesses introduced in behalf of appellees testified that as far back as 1875 James Williams cleared parts of the land on the south side of the creek, some of these clearings being made on the land in controversy; that these clearings were inclosed and some of them have remained inclosed until the present time and that they were also cultivated from time to time. We think it entirely reasonable to say that the evidence referred to, as a whole, sustains appellees' claim of possession and shows it to have been of a character sufficient to establish their ownership of the land in controversy, and that the trespass charged to appellants was committed thereon.

It appears that in 1857 appellees' ancestor, James Williams, obtained a patent for fifty acres of land on the south side of Quicksand Creek, and there was some evidence conducing to show that this patent embraced some part at least of the land in controversy; but the patent was not mentioned in the pleadings or relied on by appellees, and was brought into the case by appellants through a witness introduced in their behalf. But we have given this patent little consideration, as, in our opinion, the weight of the evidence conduced to prove that the land in controversy is included in the deed from Henry Williams to James Williams, and that the latter's and appellees' possession of the land in controversy was claimed and has been held under the deed and not by virtue of the patent, in view of which the existence of the patent neither adds to nor detracts from the sufficiency of the possession so held.

If appellees' land, as embraced by the deed from Henry Williams to James Williams, is covered by the Reynolds patent, their residence upon that part of the Williams land north of Quicksand Creek constituted actual possession in the lap of the patent, and this possession being claimed to the extent of a well-defined boundary under the deed in no way conflicting with the description of the land given therein, and continuing for more than fifteen years, gave appellees such possession to all the land covered by their deed, including that in controversy, as would defeat any claim of title under the Reynolds patent or Howard patent, conceding that the latter also covers the land in controversy. Fox v. Hinton, 4 Bibb, 559; Continental Realty Co. v. Harvey,

151 Ky., 703; Bassett v. Lush, 156 Ky., 490; White v. McNabb, 140 Ky., 828; Richie v. Owsley, 137 Ky., 63.

If, however, it be conceded that the Reynolds patent does not embrace the land in controversy and that it is included in the Howard patent, we would still have to hold that, independent of their possession under the Williams deed, the evidence of appellees' actual, adverse possession of the land in controversy to a well-defined, marked boundary, is sufficient to defeat the title asserted by appellants under the Howard patent; for though one claim the ownership of land without color of title, his ownership will be good to the extent of his actual possession, if such possession be adverse, to a well-defined, marked boundary and continue for fifteen years. White v. McNabb, 140 Ky., 828; Slaven v. Dority, 142 Ky., 640.

Judgment affirmed.