## Pratt, et al. v. Boggs, et al.

(Decided June 16, 1916.)

### Appeal from Perry Circuit Court.

1. Deeds—Description—Construction—Open Line.—Where a call in a deed is to the "open line" of a survey, the words "open line" will be construed to mean marked line and not a stake line, where the other portions of the description call for natural objects and lines running on the ground.

2. Adverse Possession—Extent of Possession.—A person who enters upon land to which he has title cannot, as against the superior title holder, extend his possession to an adjoining tract of land and acquire title thereto by adverse possession, without actually entering upon such adjoining tract and holding it adversely for the statutory period.

3. Deeds—Reservation and Exceptions—Construction—Transposition of Clauses.—Where excepting clauses in a deed naturally relate to different subjects, they will not be transposed in order to give the instrument a different meaning, on the theory that if so transposed they will, perhaps, more nearly conform to the possible intention of the grantor, unless, as they appear in the deed, they are absurd or inconsistent with or repugnant to the rest of the deed or the clear intention of the grantor.

HOGG & JOHNSON and F. J. EVERSOLE for appellants.

MILLER & WHEELER and WOOTTON & MORGAN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On June 27th, 1874, Alexander Combs conveyed to William McIntire two tracts of land in Perry county, with the exception of a certain interest in the coal banks thereon. Plaintiffs, Jesse Boggs, S. M. Boggs, and others, some of whom claim by purchase from the children and grandchildren of Alexander Combs, and others by inheritance from Alexander Combs, who died intestate, brought this suit against defendants, Alexander McIntire and William Pratt, who claim through William McIntire, to establish their ownership of the minerals in the lands covered by the deed and to recover a tract of land embraced in a 200-acre survey made in the name of R. S. Brashear, and which they claim is not covered by the deed from Alexander Combs to William McIntire. On final hearing plaintiffs were adjudged to be the owners of all the mineral rights in the first tract of land

covered by the deed from Alexander Combs to William McIntire, and the owners in fee simple of the tract of land covered by the Brashear 200-acre survey. The court further adjudged that the deed from William McIntire to Alexander McIntire and William Pratt, executed on September 13th, 1905, and recorded in the Perry county clerk's office in Deed Book No. 20, page 252, be cancelled. From this judgment the defendants appeal.

While other questions are raised and discussed, the case really turns on the proper construction of the deed from Alexander Combs to William McIntire. The land therein conveyed is described as follows:

"Lying and being in the county and state aforesaid, on the North Fork of the Kentucky River, beginning at the fishing rock, and thence across the river; thence west to the top of the mountain; thence a straight line to the top of the ridge between Dyke's Branch and School House Branch; thence running down the top of the ridge as it meanders, to the head of the Lick Branch; thence down said branch to the river below the School House Field; thence up the river to a big rock in the shoal at a conditional line between Granville Combs and Alexander Combs; thence crossing the river running up the hill with the conditional line up to the open line of a 200-acre survey made in the name of R. S. Brashear; thence running down the river with the open line of said survey to the beginning so as to include all the land in said boundary, and one-half of the coal banks excepted to Alexander Combs; thence so as to include Alexander Combs' half of a survey made in the name of Alexander Combs and William Lusk, lying on the Pinching Rock Branch and the river, and all of the stone coal is to belong to said Combs except what coal said McIntire needs for his own use." The first question we shall determine is whether or not the deed embraces any portion of the R. S. Brashear 200-acre survey. It will be observed that the description of the first tract covered by the deed concludes as follows: " * * * "; thence crossing the river, running up the hill with the conditional line up to the open line of a 200-acre survey, made in the name of R. S. Brashear; thence running down the river with the open line of said survey to the beginning," etc. The solution of the question depends on the meaning of the words "open line." It is practically conceded that if the "open line" of the Brashear.

survey is the western or marked boundary of that survey, then no portion of that survey is included in the description. If, however, the eastern or stake line of that survey is the "open line," then that survey is included. As to the meaning of the words "open line," two theories are advanced: One is that an open line is that side of a survey which was not run upon the ground by the surveyor, but was made by him in his office by protraction. The other theory is that the open line of a survey is that line which is open and marked, and, therefore, plain to be seen. The evidence fails to show that the words "open line" have any well recognized and established meaning. In the absence of such evidence, we know of no better rule for determining their meaning than to consider them in connection with the other parts of the description and give them that meaning which their use in that connection would naturally import. The description is not by courses and distances. The survey begins at a fixed monument, "the fishing rock." After calling for certain other fixed objects and lines, it runs with the top of the ridge as it meanders to the head of Lick Branch. It then goes down the branch to the river below school house field. Thence it goes up the river to the big rock in the shoal at a conditional line between Granville Combs and Alexander Combs. From that point it crosses the river and runs up the hill with the conditional line. In other words, the whole description follows natural monuments and natural lines on the ground itself. It is by no means probable, therefore, that after following all of these natural monuments and natural lines on the ground the parties then intended to depart from this character of description and run the remaining calls to and with a mere ideal or stake line. On the contrary, it is more reasonable to suppose that they intended to pursue the same method of description, and therefore, to run to and follow the actual line of the Brashear 200-acre survey as it appeared on the ground. The word "open" is defined as follows: "Patent; visible; apparent; notorious; settled; fixed." Black's Law Dictionary, page 854. And this is evidently the sense in which it was used in the deed in question. We, therefore, conclude that the "open line" of the Brashear survey is that line of that survey which is marked on the ground. It follows that

the chancellor did not err in holding that the deed from Combs to McIntire did not embrace the Brashear 200-acre survey.

But it is insisted that defendants, McIntire and Pratt, and those through whom they claim, have acquired title to the Brashear survey by adverse possession. It is well settled in this state that a party who enters upon land to which he has title cannot, as against the superior title holder, extend his possession to an adjoining tract of land and acquire title thereto by adverse possession, without actually entering upon such adjoining tract and holding it adversely for the statutory period. Altoona Trust Company v. Clint Ison, &c., 170 Ky. 706; Bowling v. Breathitt Coal, Iron & Lumber Company, 134 Ky. 249, 120 S. W. 317; Burt and Brabb Lumber Company v. Sackett, et al., 147 Ky. 232, 144 S. W. 34; Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2; Frazier v. Ison, 161 Ky. 379, 170 S. W. 977; Denney v. Abbott, 163 Ky. 499, 173 S. W. 1159. While it is true that defendants and their grantor, William McIntire, all settled on the land covered by the deed from Alexander Combs to William McIntire, the entry of the defendants upon the Brashear survey, the tract in controversy, was made within fifteen years from the time this suit was brought. It follows that they have not acquired title to the tract in controversy by adverse possession. That being true, the chancellor did not err in holding that plaintiffs were entitled to recover that tract.

We shall next consider the propriety of that portion of the judgment affecting the minerals excepted to Alexander Combs. It is admitted that the deed from Alexander Combs to William McIntire describes and conveys two entirely separate tracts of land. The description of the first tract concludes as follows: "* * *; thence running down the river with the open line of said survey to the beginning so as to include all the land in said boundary, and one-half of the coal banks excepted to Alexander Combs." From that point on the second tract, which is about a mile distant from the first tract, is described in the following language: "Thence so as to include Alexander Combs' half of a survey made in the name of Alexander Combs and William Lusk, lying on the Pinching Rock Branch and the river, and all the stone coal is to belong to said Combs except what coal

said McIntire needs for his own use." As before stated, the chancellor held that all of the minerals in the first described tract of land were excepted. In support of this construction defendants argue that as Alexander Combs owned only one-half of the second described tract of land, it was his purpose, in using the clause "and one-half of the coal banks excepted to Alexander Combs," to apply that exception to the second tract only. It is, therefore, insisted that the exception at the close of the description of the first tract should be transposed and be made to apply to the second tract, while the exception at the close of the description of the second tract should be made to apply to the first tract. The difficulty with this construction is, that it not only violates the well established rule that a deed should be construed most strongly against the grantor—Hunt v. Hunt, 119 Ky. 39, 82 S. W. 998, 26 R. 973, 68 L. R. A. 180, 7 Ann. Cas. 788; Kentucky Diamond Mining & Developing Co. v. Kentucky Transvaal Diamond Company, 141 Ky. 97, 132 S. W. 397; but does violence to the natural import of the language employed. As the excepting clauses appear in the deed, the first relates to one tract of land, while the second relates to another. When so read, they are neither absurd nor inconsistent with nor repugnant to the rest of the deed or the clear intention of the grantor. That being true, they cannot be transposed in order to give a different meaning to the instrument, on the mere theory that if so transposed they would, perhaps, more clearly conform to the possible intention of the grantor. Kea v. Robeson, 40 N. C. 373; Clements v. Henry, 10 Ir. Ch. 79. We, therefore, conclude that the clause, "and one-half of the coal banks excepted to Alexander Combs," applies to the first tract described in the deed. Furthermore, that clause is confined to one-half of the coal banks alone and its meaning cannot be extended so as to apply to other minerals. It follows that that portion of the judgment adjudging plaintiffs to be the owners of all the minerals on the first tract described in the deed from Alexander Combs to William McIntire is erroneous.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.