## Ennis v. Billingsly.

(Decided May 15, 1936.)

SMITH & ELLIS for appellant.
TERRY L. HATCHETT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Affirming.

T. A. Ennis brought this suit against George Billingsly to recover 8/10 of an acre of land. Billingsly denied the title of plaintiff, and pleaded title in himself. From a judgment in favor of Billingsly, Ennis appeals.

Ennis and Billingsly are adjoining landowners.

Lying between the two tracts at the place of dispute is the South Fork of Beaver creek. All the deeds in Billingsly's title give the "South Fork of Beaver creek, thence down said creek," as the western boundary of his tract of land. Although it is stipulated that the deed under which Ennis holds gives the eastern boundary of his land as the "South Fork of Beaver creek; thence with the meanderings of the creek," as a matter of fact his deed calls "to the middle of the South Fork of Beaver creek; thence with the meanders of the creek to the beginning." The land in dispute is a small tract of land lying on the east side of the creek and between the creek and an old fence.

Ennis concedes that the title of record is in Billingsly, but claims ownership by adverse possession. On this question the evidence is as follows: Ennis testified that he purchased his lot in 1906, and took possession and claimed to own the land. The old fence was there then, and he took possession thinking that his deed called for the fence as the eastern boundary of his lot. During the time he had owned the premises he had frequently repaired the fence, and had rented out his lot to various persons for pasturage purposes, including Mr. Payne, a former owner of the Billingsly tract. The fence was a few feet from the creek, but since then the creek bed had changed and was further away. There was never any dispute about the line until Mr. Billingsly moved the fence. On cross-examination his attention was called to the fact that the dividing line was the middle of the creek, and he was asked if he had read the deed, and he said, "Yes." On being asked, What is the reason you did not know the line was the middle of the creek? he answered, "I thought it was back to where I put my fence." He did not run the fence on the east boundary. It was built by Mr. Foster. He never put any fence on the east side himself, but furnished the wire to put it across the creek. He never cultivated east of the creek, but just rented the lot for pasture. He had kept the east side "grubbed up and cleaned up." He and some of the tenants helped to keep the fence in repair. Mark Dougherty rented the lot from Ennis 22 or 23 years ago for one year. At the time he rented it there was a fence row on the east side. He rented the land for pasture. He might have repaired the old fence along the way. He did not know

whether stock had a right to cross the creek or not. W. D. Delk testified that there was an old fence row on the east side of the Ennis lot about 30 or 40 feet from where the creek now runs. At one time he rented the Ennis lot for a period of 3 years. It was a part of the trade that he was to pay so much rent and keep the fence up. He used the lot for pasture. Part of the time Mr. Payne had the lot rented and he helped Payne fix the fence. Albert Boyd had known the line fence between Mr. Payne and Mr. Ennis. He did not know about the boundary, but the present fence was not where the original fence was during the 36 years that he had known the land. On being asked to tell the court whether or not T. A. Ennis claimed, used, and controlled that lot up to the fence line, he replied, "I think so, he pastured it." So far as he knew, the fence was recognized as the boundary. Mr. Ennis used it up to the fence for cow pasture. As a matter of fact, he did not know where the line between the parties' property was. On the other hand, George Billingsly testified that he bought the land under a deed calling for the South Fork of Beaver creek. When Mr. Payne lived there, the creek was the boundary. Ennis had never plowed or cultivated the tract in dispute. There was a water gate across there, and that was all the fence that he ever knew of. He never heard of any dispute about the land when he made the purchase. W. J. Ford testified that the land owned by Billingsly was formerly owned by Mr. Payne. In making the sale, he gave the western boundary as the creek, and Mr. Ennis was present at the sale. When he first knew the land on the east side, there were some willows and sycamores and things like that there. He and his brother formerly rented the Ennis land, but they never repaired the old fence.

The legal title to the land in dispute was in Billingsly, and his predecessors in title. The only way that Ennis could acquire title was to enter upon the land and hold it adversely for the statutory period. Pratt v. Boggs, 171 Ky. 106, 186 S. W. 901; Burnett v. Miller, 174 Ky. 91, 191 S. W. 659. The possession, of course, must have been actual, open, notorious, and hostile, and so continued as to furnish a cause of action every day during the whole of the statutory period. White v. McNabb 140 Ky. 828, 131 S. W. 1021. Here

there was an old fence on the east side of the creek, evidently put there by a former owner for the purpose of preventing stock from trespassing on the adjoining owner. There is no evidence that the fence was ever built or recognized as the dividing line between the two properties. Ennis admits that he read his deed, which calls for the middle of the creek as the eastern boundary. The presumption is that he took possession in accordance with the boundary stated in the deed. Stephenson Lumber Co. v. Hurst, 259 Ky. 747, 83 S. W. (2d) 48. He never went over on the eastern side of the creek and cultivated the land there. All that he ever did was to rent his own land now and then for pasturage purposes, to help repair the old fence, and to assist in cleaning off the underbrush, with the result that cattle occasionally strayed on the land in dispute. All this may be true, and yet it was not sufficient to bring home to the real owners of the land in dispute that Ennis' sporadic acts of possession were of a hostile character. Indeed, it can hardly be inferred that Mr. Payne, one of the former owners of the Billingsly tract, believed that when he rented the Ennis tract for pasturage purposes he was holding adversely to himself and assisting Ennis to defeat his own title. Before one may appropriate his neighbor's land, he must do something more than was done in this case.

Judgment affirmed.