## Blalock, et al. v. Atwood.

(Decided June 13, 1913.)

## Appeal from Graves Circuit Court.

1. Deeds—Designation of Street—Description—Easements.—Where a deed conveying a city lot designates the street upon which it fronts as one of the boundaries thereof, it will, in the absence of language showing a contrary intention, be construed as including the sidewalk in front of the lot and the street to the centre or middle thereof, subject to the free use of the sidewalk and street by the public. The fact that the description only brings the lot to the edge of the street can make no difference, for such description must be merely understood as specifying the ground the grantee may hold and use as exclusively his own, and as defining the line at which the public easement begins; the grantee owning subject to that easement, to the center of the street.

2. Deeds—Boundaries—Easements—Title—Shade Trees.—As according to the above rule the deed carries the front boundary of the grantee's lot to the center of the street and passes to him the title to the ground included in the sidewalk and street to the center of the street, subject to the public easement, it necessarily passes to him the title to the shade trees that may be standing on the sidewalk in front of the lot, subject to the public easement; and if the sidewalk contain a shade tree which stands

in part in front of his lot and in part in front of the lot of an adjoining owner, each owner will have a property right in so much of such tree as stands on his side of the line dividing the lots.

3. Trespass—Injury to Trees—Action for Trespass.—If a tree standing upon the line between adjoining lots is injured or destroyed by one of the owners, without the consent of the other, trespass will lie against the wrongdoer in favor of the joint owner without whose consent the tree was destroyed or injured.

4. Trespass—Exemplary Damages.—In such case, if the trespass be wantonly or maliciously committed, exemplary damages, in addition to the actual loss inflicted, may be recovered of the wrong doer.

HOLIFIELD & GARDNER for appellant.

JOHNSTON & WYMAN and R. O. HESTER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment entered upon a verdict of $275 damages which appellee recovered of appellants in the court below for a trespass committed by the latter. A former appeal in this case was dismissed because of the appellants' failure to file the transcript in the office of the clerk of this court twenty days before the first day of the second term of the court next after the granting of the appeal, as provided by section 738, Civil Code. (Blalock v. Atwood, 148 Ky., 828). The present appeal was granted by the clerk of this court.

It appears from the record that the appellant, Blalock, and the appellee, Atwood, own and reside upon adjoining lots situated on Cherry street in the city of Mayfield. The lots were originally included in the one block which belonged to the common grantor of the present owners. Appellee has owned and resided upon his lot thirteen years; the appellant Blalock, has owned and lived upon his lot only two or three years. The action was brought against appellants, L. B. Blalock, Bill Smith and Cal Harris, Smith and Harris being Blalock's employees, to recover damages for the destruction by them of a shade tree, known as a silver leaf poplar, which stood in the sidewalk in front of the lots in question and partly upon each lot. The amount of the damages claimed was $500. The object of the action and character of the injury alleged are stated in the following excerpt from the petition:

"That on or about said date (August, 1911), the defendants, L. B. Blalock, Bill Smith and Cal Harris, over the repeated and continued protest and objections of the plaintiff, wantonly, willfully, knowingly, unlawfully, forcibly and in a highhanded and oppressive way and manner, without any regard whatever for the rights of this plaintiff, entered upon said lot or land and cut the limbs and body and dug up by the roots and removed and destroyed one very large and very valuable shade tree, which tree stood at least two-thirds, if not entirely on plaintiff's side of the line and was a shade tree, a protection and an ornament to plaintiff's dwelling house and premises." * * *

The answer of appellants, in effect, admitted the removal and destruction of the tree, but denied the averments as to the manner in which it was done. Also denied that the tree was to any extent on appellee's lot or that he was damaged by its removal, and alleged that appellants possessed the right to remove it. Such of the averments of the answer as were of an affirmative nature, were controverted by appellee's reply. Appellants complain that the verdict is flagrantly against the evidence; that the jury should have been peremptorily instructed to find for appellants; and that the damages awarded were unauthorized by the evidence and so excessive in amount as to indicate that the jury were influenced by passion or prejudice.

In our opinion none of these contentions is sustained by the record. As to the first it is sufficient to say that the weight of the evidence was to the effect that the tree removed by the appellants was in part on the land of the appellee and in part on that of the appellant Blalock; three-fourths of it being on the lot of the former and one-fourth on the lot of the latter. This fact was established, not only by the testimony of witnesses familiar with the line dividing the two lots, but also by a surveyor who ran the lines of the lots. Moreover, it was shown by several of appellee's witnesses that a year or more before the removal of the tree the appellant or his son, who was his immediate grantor, caused the fence between the two lots to be rebuilt, in doing which the new fence was moved six or eight inches further over on appellee's lot by the manner in which the posts were reset, and by wholly placing the perlines and other material of which the fence was constructed on the side of the posts next to appellee's lot, instead of on the side thereof next to the appellant, Bla-

lock's lot, as they were placed on the posts of the old fence.

We do not find that the evidence furnished by the appellants' witnesses conduced to prove that the tree was not in part on appellee's side of the line dividing the two lots. It was more particularly directed toward showing that the present fence stands precisely where the old one stood, and that the tree was not as much as three-fourths of it on appellee's side of the line. We are convinced, that the evidence authorized a verdict for the appellee.

Appellants' contention as to the peremptory instruction rests upon their claim that the tree removed by them was a part of Cherry street and, therefore, appellee had no property right therein. The law gives no support to this contention. Along the east side of Cherry street in front of the lots of appellee and the appellant, Blalock, is a pavement, between the outer edge of which and the street curbing, is a narrow grass plot and on this grass plot the tree removed by the appellants was situated. The third line of appellee's deed calls to run with the line of Blalock's lot from the rear of both lots, 225 feet to Cherry street, thence north and with the east line of Cherry street, 92 feet to the beginning also on Cherry street. Appellee's deed, therefore, carried the front line or boundary of his lot to the center of Cherry street, subject to the use of the entire street and sidewalk by the public; and if the city authorities of Mayfield should discontinue the street and sidewalk, appellee's title to ninety-two feet in width, to the center of the street, of the ground now included in the street and sidewalk could not be questioned.

In Williams v. Johnson, 149 Ky., 409, the city of London having by proper authority converted a public road within its limits, upon which the appellants' lots fronted, into a macadamized street and in doing so abandoned the use of part, but at no point more than the whole of the old roadbed in front of the lots, the appellee, their grantor, by actions in ejectment against appellants, severally, sought to recover such part of the old road bed as lay between their lots and the new street, upon the ground that its abandonment as a public highway entitled him to same. We held, however, that as the deeds by which appellee conveyed the lots described them as fronting and abutting on the old road, and the street was substituted for the old road, its construction and establishment by the city operated to include the abandoned roadbed in appel-

lants' lots, respectively, and extend the boundaries there-of to the edge of the street. In the opinion it is said:

"It seems to be the universally recognized rule that the conveyance of land bordering upon a public highway conveys title to the centre of the highway, subject to its use by the public, whether it is so expressed in the deed or not; and where a conveyance, or a bond to convey, designates the public highway (or street) as one of the boundaries of the tract, it will, in the absence of language showing a contrary intention, be construed as including the highway itself to the centre or middle thereof. Tiedman on Real Property (3rd Ed.), section 601; 2nd Washburn (side page), 636; 14 Enc. of Law, 1181; 2 Ballard Law Real Property, section 48; Warbritton v. Demarett, 129 Ind., 346; Silnay v. McCool, 86 Ga., 1; Firmstane v. Splater, 150 Pa., 615; Trustees of Hawesville v. Landis, 8 Bush, 679; Snider v. Jacob, Etc., 86 Ky., 106; Jacob v. Washfork, 90 Ky., 429; Bright v. Farmer, 20 R., 772; Hommell v. Lewis, 23 R., 2299; Coppin v. Madson, 144 Ky., 634; Ballard, &c. v. City of Louisville, 3rd Ky., Opinion 31."

In Snider, &c. v. Jacob, &c., supra, we held that where the owner of land adjacent to a city exhibits a map of it, laying it out into building lots, streets and alleys, and sells the lots as bounded by such streets or alleys, this is an immediate dedication of the streets and alleys to the use of the purchaser and to the public, although they have not been actually opened; and where a lot thus sold fronts on a street, and the deed calls for the street as the boundary, the title passes to the center of the street, subject to the right of the public to the use; and if the street is never opened the purchaser is entitled to hold to the center of the strip of ground thus described as a street.

The reasons for the rule in question are thus given in the opinion:

"The purchaser of the lot, doubtless, would not have purchased it but for the usual benefits of the street; he therefore pays an increased price for the lot. He purchases the lot with the understanding that he may build houses fronting on the street, with windows, doors and door posts, and that the door steps may extend beyond the line of the street; also, that he may construct vaults below the surface of the street; and vaults in cities of considerable size are nearly always constructed under the sidewalk, and they are sometimes extended to the center of the streets. Their construction as depositories for

fuel and other necessities is highly necessary. Shade trees, posts, awnings, etc., are also necessary protections and conveniences. If the grantor held the property right in the street up to the dividing line between the street and the lot, he could deprive his vendee of the right of ingress from the street into his house, and exit from it, of light and air, ·and of planting shade trees and erecting posts and awnings, and of constructing vaults. * * * For these reasons the correct rule seems to be that where a lot fronts on a street, and the deed calls for the street as the boundary, the title passes to the center ·of the street subject to the right of public use. * * * The fact that the description only brings the lot to the edge of the street can make no difference, for the description which thus brings the lot to the edge of the street must be merely understood as specifying the land that the purchaser may hold and use as exclusively his own, and ·as defining the line at which the public easement begins; the purchaser owns, subject to that easement, to the center of the street. (Paul v. Carver, 26 Pa. St. R., 223).''

If, as the above authorities hold, appellee's deed calling as it does, to run with the east side of Cherry street, carries the front boundary of his lot to the center of the street and conveys him the title to the ground included in the street to the center thereof, subject to the public easement, it necessarily also passed to him the title to the entire sidewalk in front of his lot, subject to the public easement; and if the shade tree removed by appellants from the sidewalk was in part on his side of the line dividing his lot from the lot of the appellant, Blalock, his title to such part of the tree can not be questioned. This being true, the appellants, notwithstanding the fact that the tree was also in part on Blalock's side of the division line, had no right to remove the tree without appellee's consent, and in doing so they committed a trespass.

In Griffin v. Bixby, 37 Am. Dec., 225, it was held that: ''A tree standing directly upon the line between adjoining owners so that the line passes through it is the common property of both parties, whether marked or not; and trespass will lie if one cuts and destroys it without the consent of the other.''

The fact that the shade tree in question stood on the border of the sidewalk, where it afforded shade for the benefit of those who traveled the sidewalk, did not interfere with the appellee's right to protect it from destruction, or with his right to recover damages for the injury

done his property right therein by the act of appellants in destroying it. Musch v. Burkhart, 12 L. R. A., 486. In Russellville Home Tel. Co. v. Commonwealth, 33 R., 132, we held that it was an indictable offense under the statute for the telephone company to unnecessarily cut shade trees standing on the side of a highway on the land of one who had given it permission to erect its line and poles thereon, saying in the opinion:

"They stood upon Orndorff's land on the border of a public highway, and trees upon the highway are valuable for the shade they make for the benefit of those who travel the highway; and the owner's right to protect them from the ax was not lessened by the fact that other persons using the highway in common with him, got the same enjoyment he received from the shade afforded by the trees when standing."

Having, as we think, properly disposed of the first and second grounds urged by appellants for a reversal, we will now consider the third and final complaint, that the verdict is excessive. We regard the complaint as without merit. According to the evidence the tree was twenty-four inches in diameter, symmetrical in form, free from disease or blemish, and of sufficient size and height to afford excellent shade and at the same time greatly ornament appellee's premises. The value of such a tree is very great and we are not surprised that the witnesses introduced in appellee's behalf so regarded it. Several of them testified that its loss to appellee greatly reduced the vendible value of his property. Some of them saying in substance that its fair market value, whether sold for cash or on reasonable credit, was less by $250 or $300, after the destruction of the tree than was its value before, and others placed the difference or deterioration in the value of the property at a larger sum and one or more of them as high as $500. But in addition to the actual damage to appellee's property by the destruction of the tree, the wanton and malicious character of the trespass committed by appellants in destroying the tree authorized the jury to award appellee exemplary damages. The conversation had with the appellant, Blalock, by appellee and his responses to the requests to spare the tree made of him by the latter, illustrate the animus, wantonness and violence with which the trespass was committed. The testimony of appellee as to the conversation referred to was corroborated by others and much of it undenied by the appellant, Blalock.

Manifestly, under the averments of the petition, and the evidence, the case was one for the recovery of exemplary as well as actual damages, and we have been unable to find in the record any cause for holding that the $275 damages awarded by the jury is in any sense excessive; nor is it apparent that anything occurred during the trial to inflame the passions or excite the prejudices of the jury toward the appellants.

The instructions gave the jury, in substantially correct terms, all the law required for their guidance in arriving at a verdict, and no material error is shown in the admission or rejection of evidence.

The conclusion we have reached makes it unnecessary for us to pass upon appellee's motion to strike the bill of exceptions from the record.

Judgment affirmed.