### Rockcastle County, et al. v. Norton.

(Decided October 26, 1920.)

## Appeal from Rockcastle Circuit Court.

1. Highways—Adverse Character of Use.—A road which has been continuously, uninterruptedly and adversely used by the public for over fifteen years, and during which time the county court has exercised exclusive control over it by the appointment of overseers and the assignment of hands to work and keep it in repair, will be conclusively presumed to have been originally established in the manner provided by the statutes for the establishment of a public road, or to have been dedicated to the public for a public road and duly accepted by the proper authorities.

2. Highways—Alteration.—Under Kentucky Statutes, 1909, an established public road could not be altered nor discontinued except by an order of the county court, duly made, in pursuance of proceedings prescribed by the statutes, for that purpose, and after the notice to the public required by the statutory proceedings.

3. Highways—Alteration.—Under Kentucky Statutes, 1909, a private agreement between individuals in an attempt to alter a public road, did not have the effect to discontinue the portion of the road attempted to be altered, and the county court did not have jurisdiction to discontinue any portion of a public road, except in the manner prescribed by law and after due notice as required.

4. Highways—Parol Dedication.—Although an individual may by parol dedicate a way for a new route for a public road, and the county court may impliedly accept the new way by exercising control over it, it will not have the effect to discontinue the old route in the absence of the proceedings required to discontinue the old road, and notice to the public required by law of the purpose to do so.

L. W. BETHURUM and S. D. LEWIS for appellants.

C. C. WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This action was instituted by the appellee, J. M. Norton, against the appellants, Rockcastle county and

George Winstead, to enjoin them from opening for travel, a section of what is contended by the appellants to be a public highway of the county, and by the appellee to have once been a public highway, but which has been lawfully discontinued and closed up by fencing. The road in controversy connects the road from Mt. Vernon to Somerset, at a point near Wabd with the road leading from Hansford to Bullock's Mill, at a point near Pumpkin Hollow. The trial of the action resulted in the granting to the appellee of the relief sought, and the county of Rockcastle and Winstead have appealed. The facts, out of which the litigation grew, appear from the record to be substantially as follows. It does not appear that the road from Wabd to Pumpkin Hollow was established in the regular way by proceedings in the county court, as provided by the statutes, or at least, if it was established in that manner, there is no attempt made in the record to demonstrate that fact. The road, however, had existed for at least forty years, before the interruption complained of, during which time the public had continuously, uninterruptedly and adversely used the road as a public highway for travel, and more than fifteen years, previous to the year 1909, if not during the entire existence of the road, up to that time, the county court had accepted it as a public highway, and continuously maintained exclusive control over it by the assignment of hands to work it under the supervision and direction of overseers, who were appointed by the county court, and the hands thus assigned, under the direction of the overseers, had, during such time, kept it in such repair for travel as ordinary roads of that character were maintained at that time. From such a state of facts, it will be conclusively presumed that the road was originally established by the proceedings provided by the statutes for the establishment of a public road, or to have been dedicated for and duly accepted by the proper authorities as a public highway. Greenup Co. v. Maysville & Big Sandy R. R. Co., 14 K. L. R. 700; Gedge v. Commonwealth, 9 Bush 64; Wilkins v. Barnes, 79 K. L. R. 323; Commonwealth v. Terry, 27 K. L. R. 684; L. H. & St. L. Ry. v. Commonwealth, 104 Ky. 35; Witt v. Hughes, 25 K. L. R. 1836; Gatewood v. Cooper, 18 K. L. R. 869; Riley v. Buchannon, 25 K. L. R. 863; Commonwealth v. Abney, 4 Mon. 477; Elliott v. Treadway, 10 B. M. 22; Leslie Co. v. Southern Lumber Co.,

28 K. L. R. 335. Hence the road in controversy was an established public road of the county.

A portion of the road as established extended over the lands of appellee—that is from about where the road crossed Skeggs creek to a point where the lands of appellee adjoin the lands of one Rome Graves. This portion of the road had three hills upon it, was steep, rocky and difficult of travel by a loaded wagon. An agitation had been going on among the residents of the vicinity, and especially among those persons who were assigned by the county court to assist an overseer in keeping it in repair, for several years, to have an alteration made in the location of the road, at this point, so as to obtain a better grade for the road, and to avoid the hills, and in 1909 or in 1910 the people whose lands adjoin a portion of the road, an alteration in which was desired, and such of the persons assigned to keep the road in repair, as were present at the time, gave their assent to the alteration, and certain persons who lived south of the road with an outlet from their premises to it, within the proposed alteration, seem to have assented thereto, or acquiesced therein, when the appellee agreed to open a passway across his lands to the road to connect with the road when altered. In the meantime, verbal exchanges in regard to the alteration appear to have been taking place between the then judge of the county court, and the overseer of the road, and probably other parties, who were either for or opposed to making the change in the course of the road. Just what the parties understood from these verbal exchanges does not appear, but just before the alteration was made the overseer, as though doubting his authority to do so, or to secure information as to how to proceed, interviewed the judge of the county court over the telephone, and was assured by the judge that he had made an order, presumably in his court, directing the alteration to be made, and further directed the overseer to proceed and effect it, and in accordance with the authority which he supposed the county judge had and had exercised, he proceeded to do it. The appellee in consideration of the alteration, agreed to permit the new road bed made necessary by the alteration to be located upon his lands, and to erect at his own cost, the new fencing made necessary to inclose his lands, along the new road bed, if the county court would pay the bill for the wire fencing. This appellee understood from the overseer to have been agreed

to by the county court. The appellee and overseer, as well as other interested parties, who were consulted, all acted under the belief that the proper steps had been taken in the county court to authorize the alteration in the road, and that the proper orders and judgment in the court had been made which authorized and directed the alteration. Acting under such belief, the overseer with the assistance of the persons assigned to assist him in keeping the road in repair, made an alteration in the course of the road, by opening a new road bed, leaving the old road bed about where Skeggs creek crossed the line of appellee's lands, and running in a northerly direction over his lands until it reached the north boundary of his farm, and then along a line between his lands and those of an adjoining proprietor, and finally connecting with the old road bed at the eastern side of his lands. In order to do this, appellee's fencing was removed and to inclose his lands, new fences were erected along the new road bed by appellee, and someone having in custody, the county's funds, paid for the necessary new wire, the sum of $90.00. Since that time, the overseer of the road, with the hands assigned him by the county court, has exercised supervision and control over the new portion of the road and has given it some attention in the way of repairs. The appellee under the belief that the old road bed had been abandoned, and had reverted to him by operation of law, placed his fences across it and inclosed it with his other lands, and the general public, either because the old road bed was closed or because the road as altered offered a better way for travel, have used the new road continuously, since that time, for a period of about eight or nine years. The common school house for the district is located by the side of the inclosed portion of the old road, making it necessary for a number of the pupils, who attend the school, to travel along the old road through the inclosed premises of the appellee, or else to reach the school house by very circuitous and difficult routes. Certain landowners to the south of the obstructed portion of the old road must reach the new road bed by the passway which appellee has opened over his premises, from the old road bed to the new, and they complain that the passway is extremely ill-convenient and difficult to travel.

The record develops the fact that there was never any proceedings in the county court of any kind with

relation to making the alteration in the road, or discontinuing the old road, nor was there ever an order or judgment authorizing or directing the alteration made, or the discontinuance of the portion of the road on account of which the alteration was made, nor has there been any action by any authority since that time which authorized the alteration to be made, or the discontinuance of that portion of the old road; neither does any order of the county or fiscal court appear which authorized the payment out of the county's funds for the wire to be used in placing the new fencing along the road bed as altered.

The county court, treating the portion of the road which has been obstructed by the fences of the appellee, as still a portion of the public roads of the county, and never having been discontinued, appointed an overseer for it and the appellee having refused, after notice, to remove the fences from across the road, the overseer was proposing to remove the fences and to open the old road bed again for travel, and to restrain him and the county court from so doing, this action was instituted.

A great deal of evidence was heard relative to the respective merits of the old road and the new portion of it as avenues of travel, and much argument is indulged in relative to the binding effect of a dedication of the land for a public road by parol, and the effect of an acceptance of such a dedication by the county authorities, as well as the ill-conveniences visited upon certain persons by the obstructions to the old road, but none of these seem to involve the question upon the determination of which a decision of this action depends. The appellee, without doubt, had a right by parol to dedicate to the public the land covered by the attempted alteration in the road, which for convenience, we call the new road, and the county court might accept such dedication, either by an order formally made upon its records, or impliedly by taking supervision and control of it, and yet the question as to the discontinuance of the old road would be unaffected. The question upon which the decision of this action must turn is whether or not the acts of the parties had the effect of discontinuing any part of the public road which was then fully established. It would seem that the inevitable answer must be that parties cannot, by a private agreement between themselves, divest the public of its interest in property of which the entire public is the owner. The right of the en-

tire public and all the persons having an interest in a public road and its location or a change of its location, cannot be determined and the public divested of its rights by arrangements for their convenience among those who happen to live in the vicinity of the road. If such arrangements could be binding, and have the effect of discontinuing a public road it is very clear that a private citizen, who lives beside a public highway, by an arrangement between his neighbors by which the location of the highway will be changed to some other place, would be deprived of any outlet at all, if the county court, without any notice to the public, could then undertake to ratify the change or to accept it by taking control of the new location.

The act of March 10, 1894, was in force at the time the proposed alteration was attempted to be made and the portion of the public road discontinued. This act was embraced in chap. 110, Kentucky Statutes, edition of 1909. Section 4289 of that statute provided as follows:

"All applications to have a new road opened, or a former one changed or discontinued . . . shall be by petition to the county court signed by at least five landowners of the county, which petition shall set forth in writing a description of the road, and what part thereof is to be altered or vacated. . . ."

Section 4290 provides as follows:

"Previous to the filing of any petition mentioned in the preceding section, notice thereof shall be given by posting written or printed notices in at least five of the most public places in the district or districts in which said road shall be located, for at least twenty days prior to the term of court at which such petition is to be presented, which notice shall state the day when such petition is to be presented and the substance thereof, and a copy thereof shall be filed with the petition." Section 4291 provided that if the court was satisfied that the notice had been given as required by the preceding section, it should then appoint commissioners, and by section 4292 they were required to " view the old and new route, if any alteration in the road is proposed; if a discontinuance, then to view that road . . ." and by section 4293 to report to the court in writing the conveniences and inconveniences which will result to the public and individuals from "the alteration or discontinuance of a road."

· Section 4297 provided as follows:

"At first regular term of the county court, after the filing of the report of the commissioners, on an application to discontinue a road . . . whether exceptions have been filed thereto or not the court shall upon the report and other evidence, if any, determine whether the road shall or shall not be discontinued. . . ."

It thus clearly appears, that the right or power to alter. or change, or discontinue a public road, at that time, the alteration of the road and the discontinuance of a portion of it were attempted, was vested by the statutes in force, exclusively in the county court, and could not be effected by individuals, acting without such authority, and to give the county court, jurisdiction to effect such purposes, it must be sought by a petition of five landowners of the county, and after notice, as required by the statute of the intention to file such petition. Under the general statutes, where a county court had made an order permitting the erection of gates, over a public road, and it developed, that notice had not been given of the application, as required by section 13, art. 1, chap. 94, of the General Statutes, it was held by this court, in Mitchell, etc. v. Bond, 11 Bush 615, that the county court was without jurisdiction to make the order, and for that reason its action could not be sustained. The requirements of sections 4289, 4290, and 4291 of Kentucky Statutes, 1909, as to the giving of notice of an application to alter or discontinue a public road are just as mandatory in their requirements, as section 13, art. 1, chap. 94, General Statutes were. The reason for the enactment of statutes requiring notice to be given to the public of alterations in public roads or their discontinuance, before even the county courts are permitted to alter or discontinue them, much less individuals, is very apparent, when it is considered, that without such notice, the public for whose use the roads are maintained would be deprived of them, without an opportunity for its day in court, and without a chance to show any reasons against such alterations or discontinuance. In Mitchell v. Bond, *supra,* it was held, that although certain parties appeared in court, and resisted the application, while their actions waived the failure to give notice, as far as they were concerned, they could not by such action give jurisdiction to the court, as regards the rights of the public of which the court would not have jurisdiction in the absence of notice to the pub-

lic, as required by the statute, and this view is based upon the very good reason, that if notice were given, members of the public might appear and defend the application upon grounds not suggested by those waiving the notice, since they might be acting in collusion with the applicants. In Waller v. Syck, 146 Ky. 181, it was held, that where an application had been made to the county court to make alteration in a public road, and after due notice as required by the statute, the alteration had been ordered and made, the old road bed reverted by operation of law to the owner of the soil on which it was located, and this without anything either in the notice or in the proceedings touching the discontinuance of the road, over the old road bed, from which the road was altered, but, this holding was based upon the ground, that a notice of a proposed alteration in a road, with the particularity as to location required by statute, constituted a notice, that the old road bed, when the alteration was made, would be discontinued as a public road, but, there was no holding that any portion of a public road would be discontinued, by the act of individuals, in altering it, or the attempted alteration by the county court, without jurisdiction to do so, conferred upon it by the applicants having given to the public the necessary notice. Hence, if a county court does not have authority to make an alteration in a public road, without the statutory proceedings, based upon the necessary notice, so as to discontinue a portion of the road as already established, by express orders, it can not do so by implication, arising from exercising control over the new portion of the road. Hence, the actions of the individuals, in the instant case, although done in cooperation with the county judge as an individual, in the alteration of the road did not effect the discontinuance of any portion of the established road and the attempted discontinuance of the portion so far as concerned the rights of the public in it, and it has not been enclosed the time necessary, fifteen years, to bar its use as a public road. While the appellee seems to have acted in good faith and with commendable spirit, a contrary decision of the question involved would be fruitful of much unfortunate confusion and seeking of advantage for private ends to the detriment of the public. As to the status of the public relating to the new road, and appellee's rights in the premises, with regard to it are questions, which are not here, and are not decided.

For the reasons indicated the judgment is reversed, and the cause remanded for proceedings not inconsistent with this opinion.