## Hensley v. Lewis.

May 19, 1939.

512

C. W. HOSKINS and L. D. LEWIS for appellant.

M. C. BEGLEY for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

In and prior to the year 1921, one H. C. Lewis was the owner of something over 100 acres of land on both sides of a county road in Leslie County known as the Cutshin Road. On January 26, 1921, he conveyed to James Wooton, then husband of appellant and now deceased, a portion thereof known as lot No. 1, containing about one acre, described as follows:

"Beginning on the lower corner of Stoke Bowling; thence with meanders of the road to point to be agreed upon by the parties aforesaid; thence up the hill to another point; thence around the hill to the Dan Wooton lot; thence down the hill with said lines to the beginning, said tract containing one acre."

On December 24, 1921, H. C. Lewis also conveyed to James Wooton lot No. 2 immediately north of and adjoining lot No. 1, containing about one acre, described as follows:

"Beginning at edge of county road; thence running with county road to opposite the corner of lot where said James Wooton now lives; thence running with county road 8 poles; thence up the hill 20 poles; thence 8 poles around the hill to the fence of the James Wooton; thence with the fence down the hill to the beginning."

James Wooton conveyed the two above-described tracts to his wife, who has remarried and is now the appellant in this case. In 1931 H. C. Lewis conveyed to appellee, J. C. Lewis, a boundary containing approximately 100 acres, the exterior lines of which included the two lots previously conveyed to Wooton. There is no question about this, however, since appellee acknowledges ownership in Wooton of the land conveyed to him by H. C. Lewis.

The question presented for decision is, what land was actually embraced in the two deeds to James Wooton and what rights the appellant acquired in the public road by which the two lots are bounded on the west.

A new state highway was constructed which ran close to the northwest corner of lot No. 2, and the county road above mentioned intersected this highway a short distance north of the northwest corner of that lot. The appellee, without any proceedings being had for that purpose in the county court, changed the course of the county road so as to intersect the state highway at a point about 80 feet south of the point of the original intersection, the new county road, as located by him, running over his land on the west side of the old county road. Appellee, after the county road was moved, constructed a storehouse building which began at the edge of the new state highway and ran back across the old county road and for a distance of approximately six feet beyond the east edge of the old road.

Appellant brought this action, which was originally in ejectment, describing lots 1 and 2 as above and alleging that appellee was in possession of a part thereof. The action was transferred to equity on motion of the defendant. Appellant later filed an amended petition which set out her claims in detail, alleging that the storehouse building was six feet beyond the edge of the old road and on her land; that she was the owner to the center of the old road and that by reason of the abandonment of the old road and the moving thereof to a new location by appellee, she became the owner of all land down to the new location of the county road. This, if true, would result in giving her ownership of the entire store building and a small amount of additional land. The appellee denied the allegations of the petition and also pleaded that appellant was estopped to assert the claim made in this action by reason of the fact that she and her husband stood by and permitted the erection of the store building without making any protest and without asserting any claim to the land on which it was built or any portion thereof. The trial court found that appellee did not have any land owned by appellant in his possession and entered judgment dismissing the petition. This appeal is from that judgment.

The solution of the controversy depends mainly on what was the western boundary of the two tracts conveyed to James Wooton, that is, whether or not his deeds should be construed as conveying to him to the center of the county road. It is appellee's theory that the two lots were fenced shortly after they were pur-

chased and that Wooton took title only to the fence which was built by him a few feet east of the eastern or upper edge of the county road. It is appellant's theory, however, that she has title to the center of the old county road and that these fences do not control and locate the western boundary, since the fences were built as near to the road as possible, there being a steep bank at the edge of the road making it impossible to fence thereto.

The evidence was directed largely towards the proper location of the second corner of the second lot conveyed to Wooton by H. C. Lewis, several surveyors testifying on this question, but we regard the location of this corner as of no great importance. The north and south lines of the two lots were located by fences built shortly after the conveyance of the lots to Wooton, thus establishing the frontage of both lots on the county road. The northern fence of lot No. 2, called by the parties herein the "lower fence," begins at a point slightly north of the store building and runs up the hill in a northeasterly direction. This fence was built shortly after the second lot was conveyed to Wooton and definitely establishes that line regardless of the correct theoretical location of corner No. 2 in the description of the second lot. By the building of this fence and acquiescence therein by the parties for a long period of time, this was definitely established as the line. As said in Bain v. Tye, 160 Ky. 408, 169 S. W. 843, the rule for determining what property has been conveyed by a deed, where the description is ambiguous, is that the intention of the parties should generally control, and where the parties have by their acts given a practical construction thereto, the construction so put upon the deed by them may be resorted to to aid in ascertaining their intention. As confirming the correctness of this construction, H. C Lewis stated in his testimony, "The fence that runs down there and past the store is alright." We therefore have no difficulty whatever in determining that the north line of lot No. 2 is located far enough north to include the store building and that appellant has title to a portion of the land on which the store is built, if the deeds to James Wooton are so construed as to run to the center of the old county road.

In Williams v. Johnson, 149 Ky. 409, 149 S. W. 821, it is said:

"It seems to be the universally recognized rule that

the conveyance of land borqering on a public highway conveys title to the center of the highway, subject to its use by the public, whether it is so expressed in the deed or not; and where a conveyance, or a bond to convey, designates the public highway as one of the boundaries of the tract, it will, in the absence of language showing a contrary intention, be construed as including the highway itself to the center or middle thereof.''

It is true that the description of the second lot reads: ''Beginning at edge of county road; thence running with county road to opposite the corner of lot where said James Wooton now lives * * *,'' and it might be thought that, by reason of the fact that the description begins in the edge of the road, the deed did not convey to the center of the road. However, in Blalock v. Atwood, 154 Ky. 394, 157 S. W. 694, 46 L. R. A., N. S., 3, it was held that the fact that the description only brings a lot to the edge of a street makes no difference and the title passes to the center of the street, subject to the right of public use. The holding in Blalock v. Atwood is in accord with the rule sustained by the weight of authority, that in the last analysis the question of where a line is to be fixed with reference to the center of a highway depends upon the intention of the grantor, which is to be ascertained by the language used in the deed construed in the light of surrounding circumstances. See cases cited in note, Volume 8, page 774, American Jurisprudence.

The fact that a fence was erected a few feet east of the old county road does not mean that that fence became the western line of lot No. 2. There is no evidence that the fence was built or recognized as the line. On the contrary, the evidence discloses that the road was intended to be the line—H. C. Lewis so testifies. The deed called ''running with the county road'' and the evidence develops that it was impractical to build the fence any closer on account of the bank existing at that point. The building of a fence near a road or creek, where the deed calls with the road or creek, does not establish the fence as the boundary line in the absence of evidence that it was recognized as the line. Ennis v. Billingsly, 264 Ky. 254, 94 S. W. (2d) 669.

We thus have no trouble in reaching the conclusion that the deed conveying lot No. 2 to James Wooton was intended by the parties to, and did, convey to the center

of the county road. Since this is true, it necessarily follows that the store building erected by appellee is partially located on land owned by appellant.

It is contended by appellee, however, that the county road at the point where the store building is constructed across it had not legally been abandoned and that, therefore, appellant could not maintain this action. Appellee is undoubtedly correct in his contention that there was no legal abandonment, because an abandonment can be effected only in the manner provided by statute. Rockcastle County v. Norton, 189 Ky. 690, 225 S. W. 1079. However, in the present case the appellee has appropriated to himself the fee simple title to a portion of the roadbed which appellant owns, and she has the right to maintain this action for the recovery of the land thus appropriated, but, of course, the land, when recovered by her, will be subject to the easement of the county therein for road purposes until such time as there is a legal abandonment of the road by the county. However, the moving of the county road by appellee to a new location gives appellant no right to recover land to the road as now located, especially under the circumstances of this case where there has been no legal abandonment of the old road or legal establishment of the new road.

As to appellee's contention that appellant is estopped to make any claim to any portion of this land because she and her husband sat by and permitted the store building to be built without making any protest or any claim to the land on which it was built, it is our opinion that the weight of the evidence establishes that James Wooton, the husband of appellant, did make protest at the time of the construction of the building. Appellee and H. C. Lewis testify that no protest was made. We must remember, however, that they are both interested witnesses. The testimony of two apparently disinterested witnesses make it appear that James Wooton notified H. C. Lewis of his claim to the land while the building was being erected. Elbert Dixon testifies that he talked with appellee before the store was built and Mr. Lewis said to him, "If Sudia's deed called with the road she would get it." Sheridan Dixon testifies to a conversation with appellee while excavation was being made for the building and that appellee said to him, "James Wooton came down when I was grading and said to me, 'Did you know this is my land you are dig-

ging on?'" The testimony of these two witnesses makes it apparent that a controversy took place between appellee and Wooton at the time of the erection of the building. In addition to this, it is doubtful if the doctrine of estoppel in such character of cases applies where the title to the land is equally well known to both parties, as was the case here. 10 R. C. L. 783; Casey's Lessee v. Inloes, 1 Gill, Md., 430, 39 Am. Dec. 658.

It appeared during the testimony of appellant that after her husband, James Wooton, conveyed her the two lots above described, she some time thereafter reconveyed the lots to him. This testimony was elicited on cross-examination. On redirect examination, she testified that the deed of reconveyance made by her to him was signed by her alone. After she testified that her deed to her husband was signed by her alone, the inquiry was pursued no further by appellee and such deed by her was not offered in evidence by appellee, nor was production thereof sought by him. We must therefore take it as conclusive that such deed was signed by appellant alone. This being true, the deed was void and did not operate to divest appellant of title. Kentucky Statutes, Section 506; Hall v. Hall, 236 Ky. 42, 32 S. W. (2d) 536; Duncan v. Jenkins, 215 Ky. 543, 286 S. W. 783.

Complaint is made by appellee of the action of the trial court in permitting a continuance after trial was started in order to enable appellant to take the deposition of a surveyor. However, the conclusions we have reached herein are reached without regard to the testimony of this surveyor. Such action upon the part of the trial court, if erroneous, did not affect the substantial rights of appellee.

The conclusions we have reached herein make it apparent that appellant is the owner of the fee simple title to the center of the old county road and should recover from appellee the land on the east side of the center of the county road on which appellee's building is located.

The judgment is reversed with directions to enter a judgment in conformity with this opinion.