**Bernard DELPH et al., Appellants,**

**v.**

**C. Lawton DALY et al., Appellees.**

Court of Appeals of Kentucky.

June 6, 1969.

Rehearing Denied Oct. 10, 1969.

John M. Berry, Jr., Berry & Floyd, Carrollton, for appellants.

Frank Ware, Vest & Ware, Covington, for appellees.

CLAY, Commissioner.

Appellants were enjoined from building a roadway on their property which would join or form a continuation of an existing roadway through a residential subdivision in Gallatin County. It is contended on appeal that the Chancellor erroneously determined the rights of the parties.

In 1964 one Fogg had a life estate and appellant Nancy Delph had a remainder interest in a 230-acre tract of farmland, part of which fronted on the Ohio River Markland Dam Pool. Acting for himself and the remaindermen, he planned a residential subdivision of an 11-acre area. He recorded a plat which divided the property into 20 numbered lots. These lots were somewhat unusual in that each was in two sections, divided by a 40-foot passway designated on the plat as "Road Easement". For our purposes we will consider this subdivision as a strip running from south to north, with water frontage on the west side. At the southern boundary of the subdivision is a private road which extends to Kentucky Highway No. 35. The north boundary, including that of the roadway, was designated on the plat as a "Fence Line". Appellees were conveyed fee simple title to lot No. 9 in this subdivision. The deed did not contain a metes and bounds description but simply referred to the lot by number.

Lot No. 9 is typical of the other lots in this subdivision. On the plat it has the appearance of two separate lots, one on each side of the 40-foot roadway. The eastern section, containing .14 of an acre, has the dimensions of 60 x 100 feet. The western section (on the water front) contains .31 of an acre and has the dimensions of 100 x 114 feet. Both the plat and the surveyor's description of this subdivision show very clearly that the opposite sides of the "Road Easement" are designated as boundary lines of the two sections of each lot. The significance of this will be commented on later in the opinion.

After the death of Fogg in 1966, the balance of the original tract was divided between the two remaindermen and appellant Nancy Delph became the fee owner of 71 acres bordering on the water front and extending northwardly from the subdivision. She began the development of a new subdivision immediately north of the original one. Her intention to build a roadway through the new subdivision, which would constitute an extension of the "Road Easement" in the original subdivision, precipitated this lawsuit. Each of the opposing parties contends that he owns the fee in the original road. The Chancellor determined that appellees were the owners (of the road segment dividing the two sections of their lot No. 9) and enjoined appellants from doing any act leading to the building or construction of a roadway joining to or forming a continuation of the roadway in the original Fogg subdivision.

It is evident from this record that the legal character of the "Road Easement" is not established specifically by the plat or the deeds. The parties have stipulated that it was *not* dedicated to the public. The crucial legal question is whether the original owners (in whose shoes appellants now stand) retained the fee in this roadway when the Fogg subdivision was created and the lots therein sold, or whether they conveyed it to the lot owners. We think this a classic case for the application of the principle quoted in Monroe v. Rucker, 310 Ky. 229, 220 S.W.2d 391, 393:

"The tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time. Hence, in the construction of deeds surrounding circumstances are accorded due weight. In the consideration of these various factors, the court will place itself as nearly as possible in the

position of the parties when the instrument was executed."

The Chancellor found as a fact that it was the intention of Fogg (representing the original owners) to convey to each lot owner the fee simple title to the roadway dividing the two sections of each lot. This of course was the basic issue in the case. This finding, however, was in part based on a conclusion of law that the grantors could not "reserve" any rights in the passway without an "explicit reservation thereof". We find no basis for such a legal conclusion and it begs the question presented in this controversy. If the grantors did not convey the fee to appellees, it still remained in them and no one is required to "reserve" in writing, or otherwise, an interest which he has not parted with. The cases cited by appellees of Lebus v. Boston, 107 Ky. 98, 51 S.W. 609, 47 L.R.A. 79; McGurn v. Louisville & N. R. Co., 177 Ky. 835, 198 S.W. 222; and Conrad v. Smith, 203 Ky. 171, 261 S.W. 1103, have no application here. In those cases the grantors were claiming a *passway easement by implication*, and it was not questioned that they had conveyed fee simple title. That is the very bone of contention in the case before us.

It is a generally recognized rule that in the absence of language showing a contrary intention, where a lot is conveyed by number with reference to a plat which shows the lot as abutting on a street or highway, the grantee takes the fee to the center of such street or highway. Henkenberns v. Hauch, 314 Ky. 631, 236 S.W.2d 703; Kreamer v. Harmon, Ky., 336 S.W.2d 561. In Matthews v. Hudson, 308 Ky. 39, 213 S.W.2d 424, this "rule" was referred to as a "presumption". It is simply a precept of construction utilized to determine the intention of the grantor in the absence of other controlling language or circumstances. See exhaustive annotation in 49 A.L.R.2d 982. Most of the cases in which it has been invoked involved *public* streets and highways. There is apparently a conflict of authority as to whether the rule applies

to *private* passways. 12 Am.Jur.2d, Boundaries, section 53 (page 593). To the extent the situations are similar, it should apply equally to both. However, in a carefully considered Oregon case the court reached the conclusion that the intention of the grantor *not* to grant to the center of a *private* passway "is more readily indicated than in the case of a public way". Buel v. Mathes, 186 Or. 160, 205 P.2d 551, 561. The reasons appear here.

The "main basis" for this rule is that it is unreasonable to suppose that the grantor intended to retain his fee title in the highway area since it is not likely to be of any practical importance to him. 12 Am.Jur. 2d, Boundaries, section 38 (page 578); see also Henry v. Board of Trustees, 207 Ky. 846, 270 S.W. 476. When we consider a *private* passway however, *with the grantor owning adjoining land,* this reason for the rule disappears. The practical importance of the grantors' interest in this roadway is exhibited in this very case. Assuming the rule of construction still has some force, we consider whether the plat, appellees' deed and the surrounding circumstances establish an intent on the part of the grantors to retain the fee.

■ Appellants contend it is obvious from the plat itself that appellees, when they were conveyed lot No. 9, were conveyed fee simple title only to the two sections lying on opposite sides of the roadway. Certainly they were two distinct and complete separate sectional areas. Add to this the reference in the surveyor's description to the sides of the road "which define lot boundaries". While some courts take a different view, in Kentucky we recognize that fixing the road line as a lot boundary does not prevent the grantee from acquiring a fee interest to the center of a street or highway. Hensley v. Lewis, 278 Ky. 510, 128 S.W.2d 917, 123 A.L.R. 537. But this ostensible boundary takes on more significance in the light of the other surrounding circumstances of this particular case. While appellants' position on this point is persuasive, the peculiarity of this layout still leaves one in doubt concerning the grantors' intention.

Fortifying appellants' position further is the significance of the word "Easement" as designating the roadway on the plat. Who gets the easement? Somebody must have it. Appellees do not contend that the grantors reserved it. The use of this description of the roadway can be most reasonably construed to limit the interest which the grantees were granted in it. It certainly does not show any intention of the grantors to part with the fee therein. It indicates the opposite.

To the foregoing we must add a most weighty indication of the grantors' intent. It rests on certain language in the deeds to the subdivision lots. This "reservation" appears:

> "The owner of this lot shall be required to contribute his, her or their proportionate share of the costs of maintaining the *roadway running from* Kentucky Highway No. 35 *to and beyond* lot No. 20." (Emphasis added.)

It will be remembered that lot No. 20 was the northernmost lot in the subdivision, and on the plat the roadway ended there. Why did the grantors use the word "beyond"? There is an impelling inference that they had in mind a future extension of this roadway if, and when, there was development of the adjoining water-front property (which appellants are now doing). The Chancellor construed the language to mean that the roadway ran "to" the southern boundary of lot No. 20 and "beyond" meant to the northern boundary thereof. This is rather strained. "Beyond" lot No. 20 cannot mean anything but beyond lot No. 20. The only thing *beyond* lot No. 20 was land owned by the original grantors out of which this subdivision was carved.

One of the appellees testified that the husband of one of the original grantors had told him that the "turnaround" (apparently the northern extremity of the roadway) was

"the end of the subdivision". The competency of this evidence is questioned, but it throws no light on the intention of the grantors with respect to the legal interests in the roadway at the time the subdivision was laid out. It may be observed that no such "turnaround" shows on the plat. The roadway goes *through* lot No. 20. If lot No. 20 was intended as the permanent terminal point of the roadway, why was the latter shown as extending through that lot? No other lot owners could have any interest in an easement through that lot and of course the owner of lot No. 20 would need no easement over this segment if he held it in fee. The conclusion is inescapable that the roadway was not *part* of lot No. 20, or any other lot.

We recapitulate the indicia of intent disclosed by the documentary evidence. The plat descriptions of the lots show an intention to convey in fee only those two sections on each side of the roadway. The word "Easement" in describing the road militates against the contention that the grantors intended to part with the fee therein. Finally, the fact that the grantors owned the adjoining land and made reference to a possible roadway "beyond" lot No. 20 rather clearly indicates the grantors retained an interest in the roadway. All of these circumstances are amply sufficient to overcome the "presumption" that the grantors were conveying the fee in the roadway to the lot owners. Plunkett v. Weddington, Ky., 318 S.W.2d 885, is clearly distinguishable.

Appellees present the further argument that appellants' proposed extension of this roadway will place an unreasonable burden on the present roadway, and the Chancellor specifically so found. There can be no question that the burden on the original roadway will be increased, but whether it may be held to be unreasonable depends on the legal rights of the parties. The situation we have here is the reverse of the situation usually encountered when the *dominant* estate (having the easement) attempts to enlarge or extend its use so as to increase the burden upon the *servient* estate (the fee owner). Both parties rely on McBrayer v. Davis, Ky., 307 S.W.2d 14. Therein it was held that an owner of land who had subdivided a portion of it and had created a joint right to use a passway could not extend or enlarge the easement for the benefit of property *not a part of the original tract*. The court noted that there appeared no case in this jurisdiction defining an unreasonable burden on a private roadway. In Central Kentucky Natural Gas Co. v. Huls, Ky., 241 S.W.2d 986, 987, 28 A.L.R.2d 621, it was held:

> " * * * the servient owner has the right to use the land in any way not inconsistent with the rights granted under the easement or which do not become an encroachment upon or interference with the means and facilities the owner of the easement may lawfully use."

We are again forced to take note of the language in the deed which requires appellees to share in the maintenance of the roadway "to and beyond lot No. 20". The additional use of this roadway will increase the burden of maintenance on appellees. It will not, however, interfere with appellees' use of the easement. The language in the deed gave notice that this roadway might be extended. Of course, as held in McBrayer v. Davis, supra, the use cannot be extended beyond the original tract. In our view, the additional use was contemplated by the parties and, therefore, it cannot be held unreasonable. The court's conclusion of law on this point was erroneous.

The Chancellor found as a fact that the grantors intended to convey the fee to the lot owners. This finding was actually a mixed question of law and fact and was based in part upon an erroneous legal theory. If we consider it a finding of fact under CR 52.01, we cannot set it aside unless clearly erroneous. We think it was, particularly in view of the fact that the Chancellor considered that the failure to

explicitly "reserve" the fee indicated an intention to convey. On the other hand, this finding was essentially one of law. The facts were not in dispute. The issue to be determined was governed by documentary evidence. The construction of deeds is a matter of law, not of fact. Belcher v. Elliott, 6 Cir., 312 F.2d 245. Under either concept, in our opinion the Chancellor reached an erroneous conclusion.

The judgment is reversed, with directions to deny the injunctive relief sought by the complaint.

HILL, MILLIKEN, PALMORE and STEINFELD, JJ., concur.