Oscar R. WHILDEN et ux., Appellants,

v.

Ray COMPTON et al., Appellees.

Court of Appeals of Kentucky.

Feb. 4, 1977.

As Modified On Denial of Rehearing March 25, 1977.

Discretionary Review Denied June 8, 1977.

Hobson L. James, L. A. Faurest, D. Michael Coyle, Elizabethtown, for appellees.

Larry D. Raikes, Hodgenville, for appellants.

Before PARK, VANCE and WILHOIT, JJ.

PARK, Judge.

Oscar R. Whilden, Jr., and his wife, Ann Whilden instituted this action in the Hardin Circuit Court alleging that Ray Compton and his wife, Lillian Compton, had trespassed upon property owned by the Whildens. The Whildens sought to recover damages for the trespass and an injunction against any further trespass by the Comptons or their agents and employees. The dispute arose when the Comptons attempted to open a new access road to a trailer park which they owned and operated adjacent to the property of the Whildens. The Comptons' predecessors in title were joined by third party complaints. The Nolin RECC was joined as a co-defendant because it cut trees in the process of providing electrical service to the trailer park. Following a trial before the court without a jury, a judgment was entered in the Hardin Circuit Court dismissing the Whildens' complaint. The Whildens appeal.

This dispute can best be understood by reference to a sketch or plat which is attached to and made a part of this opinion. The property owned by the parties is located immediately south of the Fort Knox military reservation in Hardin County, Kentucky. Mr. and Mrs. Compton are undertaking to open a new access road to their trailer park at point "Z" on the plat. From point "Z", traffic from the Compton's trailer park would proceed southeastwardly along what is known as the Hinton Road to its intersection with the Safari Road. From the Safari Road, traffic could then proceed along one of the main roads into Fort Knox. The Comptons contend that Hinton Road is a public road and that their property abuts upon the right of way of Hinton Road. As the owners of property abutting on the right of way, the Comptons contend that they had a right to open the access road at point "Z".

On the other hand, Mr. and Mrs. Whilden claim that Hinton Road is not a public road north of its intersection with Safari Road. The Whildens also assert that their proper-

ty extends to the line "A–B". Thus, the construction of the access road at point "Z" would constitute a trespass upon the property of the Whildens. On appeal, the Whildens raise two grounds for reversal of the judgment of the circuit court. First, the Whildens assert that the circuit court erred in holding that Hinton Road was a public road. Second, even if the Hinton Road was a public road, the circuit court erred in holding that the Whildens' northeast property line did not extend beyond the east right of way line of Hinton Road.

Prior to 1943, the property north of the land in question was privately owned. Hinton Road extended north to the Vine Grove-Fort Knox Road. During World War II, the United States Government expanded the Fort Knox military reservation by acquiring the land immediately to the north and east of the Whildens' farm, including the land of the Comptons. The army closed Hinton Road north of point "B" to public travel, but there was evidence that the Army continued to use Hinton Road in order to gain access to the reservation property. In the 1960's, the tract of land east of the Whilden property was declared to be surplus by the United States Government, and it was sold at public auction. The Comptons subsequently acquired a portion of this surplus government land, containing 20 acres.

There was no evidence that Hinton Road was established by statutory proceedings or that there had ever been any formal dedication and acceptance of Hinton Road as a public road. However, a public road can also be established by general and long continued use of a passway by the public. Sometimes the public road is established under the theory of dedication by estoppel. *Freeman v. Dugger*, Ky., 286 S.W.2d 894 (1956). The public's right to use a passway may also be established by prescription by adverse user for a period of 15 years. *Cummings v. Fleming County Sportsmen's Club*, Ky., 477 S.W.2d 163 (1972). In a memorandum opinion, the circuit court made the following finding:

"Without repeating all of the evidence in this case, which is voluminous, the Court will merely state that the evidence is overwhelming that Hinton Road has existed as a public road for more than 60 years."

Under CR 52.01, this court cannot set aside the finding of the circuit court unless it is clearly erroneous.

In finding that Hinton Road was a public road, the circuit court relied upon a number of different facts in the testimony. Claude Hinton, a nephew of a former owner of the Whilden tract, testified that the Hinton Road had been used by the public for 60 years. A number of families lived along the road in the area now within the Fort Knox military reservation. One of the owners maintained a blacksmith shop business which was patronized by the general public. According to Claude Hinton, the county repaired or improved Hinton Road in 1922. Charles Roberts was familiar with the road in the 1930's and testified that Hinton Road was served by a rural mail route and that the county would grade the road about once a year. A 1938 aerial photograph introduced into the evidence clearly shows that Hinton Road was open from the Safari Road to the Vine Grove-Fort Knox Road. Hinton Road was not a cul-de-sac as was the passway involved in *Cummings v. Fleming County Sportsmen's Club, supra,* which was cited by the Whildens. There was also evidence that the Army has continued to utilize Hinton Road as a means of access into the Fort Knox military reservation. The finding by the circuit court that Hinton Road was a public road is not clearly erroneous, and it will not be set aside by this court.

Although the Army has blocked public travel over that portion of Hinton Road within the Fort Knox military reservation, the Army has continued to use the road as a means of egress and ingress. Hinton Road was not legally closed pursuant to KRS 178.070, *Freeman v. Dugger, supra,* nor was it abandoned or closed for a period of more than 15 years. *Lovins v. Denney*, 311 Ky. 48, 223 S.W.2d 352 (1949). The circuit court did not err in holding that Hinton Road

north of the Safari Road was still a public road.

Even if Hinton Road is a public road, the Whildens assert that the access road is being built by the Comptons on land owned by the Whildens that is outside the right of way of Hinton Road. The Whildens' argument is based upon the assumption that their boundary line commences at point "A" on the plat, runs thence to point "B", and from there to points "C", "D", "E", "F", "G", "H", "Y", "X" and "AA" before returning to the beginning at point "A". Point "A" is very close to the edge of Hinton Road. However, as Hinton Road proceeds northwestwardly, it veers away from line "A–B" for some distance. At point "Z", Hinton Road is 48 feet from line "A–B". The Whildens' predecessors in title had maintained a loading chute and tobacco beds in the area between the east edge of Hinton Road and the line "A–B". The Whildens have mowed grass and cleaned the area east of the road since they acquired the property in 1962.

The Whildens' claim is based in large part upon the fact that the line "A–B" follows a very old fence line. The existence of this old fence line on the east side of the road is not in dispute. In addition, the evidence also established that there has always been a fence line on the west side of the road between points "AA" and "BB". The circuit court concluded that the two fence lines, "A–B" and "AA–BB", marked the right of way of Hinton Road.

■ The Whildens attempted to establish the line "A–B" as their east boundary through the testimony of the surveyor, Urban E. Schaffner. The only other surveyor to testify, T. J. Patterson, was appointed by the court to survey the boundary. Patterson testified that he was unable to locate the boundary. The question presented is whether the circuit court was compelled to accept the conclusion of Schaffner that the line "A–B" represented the true boundary. This court concludes that there was substantial doubt as to the accuracy of Schaffner's opinion at both point "A" and point "B".

Schaffner testified that he located a stone in a post oak at point "C" as called for in the deed to the Whildens. From point "C", Schaffner ran a line to a hickory marked with a nail at point "B". Two reasons exist for doubting Schaffner's location for point "B". First, the Whildens' deed calls for two post oaks, rather than a hickory. Second, as run by Schaffner, line "C–B" was 1,380 feet long rather than 80 poles (1,320 feet) as called for in the deed. As Schaffner could not locate the two post oaks called for in the deed, he was not justified in extending the call beyond the distance specified in the deed in order to reach the hickory tree at point "B". *White v. Philpot,* 221 Ky. 529, 299 S.W. 173 (1927).

The location of the southeast corner of the Whilden property requires a discussion of an exception in the deed to the Whildens for a tract conveyed in 1931 by a predecessor in title to the Whildens. According to Schaffner, the exception or "sell off" tract was bounded by lines from point "AA" to "X" to "Y" to "I" and back to point "AA". In Schaffner's opinion, the Whildens owned the road and the property east of the road down to point "A". This projection was referred to as the Florida Peninsula. Several things must be noted about these conclusions of Schaffner. First, Schaffner located point "AA" at a large black oak although the deed calls for stone rather than a black oak. It should be noted that the black oak at point "AA" is approximately 60 feet west of the fence post at "A" selected by Schaffner as the beginning point of the Whildens' property. Second, the line "Y–X" as run by Schaffner had a length of 990 feet, some 23.1 feet less than the 61⅗ poles (1,013.1 feet) called for in the deed. As located by Schaffner, point "X" is in the fence line between "AA" and "BB". The 1931 deed calls for a stone in the road. If line "Y–X" was extended to the full distance called for in the deed, it would terminate in the middle of the Hinton Road. There is no justification for Schaffner's assumption that Whildens' predecessor in title did not intend to convey to the center of the Hinton Road. *Hensley v. Lewis,* 278 Ky. 510, 128 S.W.2d 917, 123 A.L.R. 537 (1939).

The deed to the Whildens contains a call to a stone. Schaffner did not find this stone, and the circuit court was not required to accept Schaffner's conclusion that the stone should be located at the post at point "A", rather than the large black oak at point "AA", or some point in the center of the Hinton Road.

The trial court made the following findings of fact:

"The property of the Plaintiffs has been fenced along the west side of the road, and a fence line existed along the east side of the road, although at places the road was some distance from the fence as it meanders around sink-holes and other obstructions.

"This Court sees no merit whatever to the claim of the Whildens. The Plaintiffs have proven no superior or any right to this land, and are claiming it just because it is there. It is rather apparent that, being the last residents on the road before the Reservation begins, they have decided to usurp the road and the unused land to the east of the road, and have convinced themselves in their own minds that it is theirs.

*   *   *   *   *   *

"This Court is of the opinion  *  *  * that Hinton Road is a public passway and is bounded on the east by the old fence line and its extension, and that this is also the boundary line of the Compton land on the west; further, that the right-of-way of the passway on the west is the existing fence along the Whilden land and where the fence ceases to exist the ruts of the old road on to the Military Reservation boundary. The Court further finds that none of the parties have any right whatever to interfere with the free and unrestricted use of this roadway, and that the Comptons may use it and the right-of-way as ingress and egress to their property."

In so holding, the circuit court relied upon the following rule enunciated by the Court of Appeals in a prescriptive easement case:

"Where, as is usually the case, the passway is not enclosed, the extent of the user is necessarily marked by wagon tracks or beaten way, since there are no other evidences of continuous use under claim of right thereto, and there is no notice to the owner of the servient estate of either an adverse claim or use outside of the beaten path. But, when, as here, the beaten path was enclosed by fences forming a lane, all parties are thereby notified that the use under claim of right thereto extended not only to the beaten path, but to the fences, and, such use having been allowed to continue as a matter of right for the statutory period, in our judgment the adverse claim to use the lane as a passway ripened into a right." *Haffner v. Bittell,* 198 Ky. 78, 248 S.W. 223 (1923).

The Whildens attack these findings by the circuit court on basically two grounds. First, it is unreasonable to assume that the right of way to the east of Hinton Road would leave 30 to 60 feet of vacant land. As the deed to the United States from the Comptons' predecessor in title described the boundary by reference to the land of the Whildens' predecessor in title, there must be a common boundary between the Comptons and the Whildens. Next, it is argued that the circuit court found the west boundary of the Comptons' property to be the old fence line fixed by the line "A–B" on the plat. As the parties have a common boundary, the circuit court did make a finding of fact that the line "A–B" represents their eastern boundary.

Such reasoning completely distorts the circuit court's findings of fact. First, the Whildens' deed does not fix the eastern boundary of their property by reference to the land of the Comptons or their predecessors in title. Even if the old fence line shown by the line "A–B" on the plat represented the western boundary of the Compton's property, it does not follow that the Whildens have proved title to all property west of that line. Because of the difficulty in locating the northern and eastern corners of the Whilden property, the circuit court clearly held that the Whildens had failed to prove title to any land east of Hinton Road.

When the Whildens' predecessors in title conveyed out the ten acre tract, they did so by reference to Hinton Road. The building of a fence near a road does not establish the fence as a boundary line when the deeds call for the road as the boundary line. *Hensley v. Lewis, supra.* In the present case, neither the old fence line on the east side of the road (line "A–B") nor the fence on the west side of the road (line "AA–BB") has any particular significance in fixing the boundary between the property of the parties.

This court has carefully reviewed all of the exhibits as well as the transcript of the evidence. The court concludes that the circuit court did not err in dismissing the complaint.

The judgment of the circuit court is affirmed.

All concur.